WM. D. CHIPLEY, APPELLANT, VS. WAYNE K. ATKINSON, APPELLEE.

1. An action lies in behalf of an employe against a person who has maliciously procured the employer to discharge such employe from employment in which he is engaged under a legal contract, for a certain period, provided damage result to the employe from such discharge.

2. An action will also lie where the period for which the employment is to continue is not certain, if damage result from the discharge; even though, from inability to ascertain the amount of the damage, a verdict for nominal damages only should result.

3. The fact that no contract, nor any legal right of the employe as against the employer, is violated by the employer, or that no action can be maintained by the employe against the employer for such discharge, does not prevent a recovery against the third person who has maliciously procured the discharge, and which discharge would not have occurred but for such procurement.

4. An act done or attempt made by a third party with the malicious intent to procure such a discharge, but not successful in procuring it, will not support an action brought for maliciously procuring the discharge. The actual procurement of the discharge is an essential to such an action.

5. The declaration alleged in effect that there was a contract for employment to be continued for a period of time : Held, It was error to charge the jury that the plaintiff could recover even though there was no contract for a definite term of service.

6. An absence from the agreement or contract of service of any stipulation for a certain amount of wages or compensation, will not defeat a recovery. If the value of the compensation to be paid can be ascertained in any legal way it is sufficient.

7. A discharge by the employer is essential to a recovery. If the em-

W. D. Chipley v. Wayne K. Atkinson—Statement of Case.

ploye was not· discharged, but voluntarily left the employment on account of the conduct of the party charged with having procured his discharge, the action cannot be maintained.

8. The speculative profits of a proposed business cannot be the basis of the assessment of actual damages. Where, however, in a case of like kind to the one set up in the first count of the declaration, the defendant knew or believed, or had reason to believe, that the employer had promised or did actually intend to admit the plaintiff into partnership with him, the fact of such knowledge or belief, or reason to believe such promise or intention, may be considered by the jury in passing upon the motion of the defendant and in fixing exemplary damages.

9. One person may withhold a gratuity from, or may break his contract with, a second person, for the reason that the second person retains a third person in his employ or with an interest in his business, without giving a right of action to the third person. No legal right of the third person is violated by the first person, who simply so withholds or breaks his contract for such reason; nor is there any privity of contract between the first and the third persons. The assumed reason for the withholding or breach is not of itself, or with the mere withholding of the gratuity or the mere breach of the contract, a ground of action ; nor is proof of the mere withholding or breach, because of such retention of the third person, proof of a procurement by the first person of the discharge. It is permissible, however, in an action like this to show that such withholding or breach was maliciously used by the first person to procure or persuade the second to discharge the third person.

Appeal from the Circuit Court for Escambia county.

Atkinson, who was plaintiff, sued Chipley, for that the plaintiff on June 16th, 1883, was in the employment of Kehoe & Walker, who were partners in the manufacture and sale of brick, as a general superintendent of their business, under an agreement by which such employment was to be continued for a long period of time, and with a prospect and promise of an interest in the said business ; and that the defendant contriving and intending to injure the plaintiff did maliciously and wrongfully procure and cause

the said Kehoe & Walker to discharge and dismiss the plaintiff from their service, by reason of which wrongful and malicious act of defendant the plaintiff suffered great loss and damage by being thrown out of the said employment by which he earned the support of himself and family, and by being forced to travel and maintain himself and family while in search of other employment, and that by the said wrongful and malicious act of the defendant the plaintiff suffered other and further expense, trouble, inconvenience, annoyance and pain of mind and body to the damage of the plaintiff of five thousand dollars.

There is also a count for slander, in that the defendant falsely and maliciously spoke and published of the plaintiff the words: "He is trying to rob the railroad company," meaning the Pensacola and Atlantic Railroad Company, to plaintiff's damage five thousand dollars.

The defendant pleaded not guilty, and there was a trial by jury, resulting in a recovery by the plaintiff of $740 damages, and the defendant appealed.

The instructions given by the Judge to the jury, and excepted to, are stated in the body of the opinion. Those given and not excepted to are as follows:

"If you find that he was at the time alleged in the employ of Kehoe & Walker, and that the defendant maliciously and wrongfully procured his discharge, you may find for the plaintiff and give him the damages which resulted from the discharge. You may, in addition, if you find the malice, give him what the law calls vindictive or exemplary damages, which are given to deter men from doing those things that are wrongful."

"If you find that the contract was not for a definite term, and there are no payments or other circumstances to show that the hiring was from period to period, then it would

be a hiring from day to day, and terminable at the will of either party."

"In order that plaintiff may recover under the first count he must prove that he was discharged by Kehoe & Walker. If the proof satisfies you that he voluntarily left the service of Kehoe & Walker to save them from trouble and expense, then he cannot recover."

"In order that the plaintiff may sustain an action against the defendant on the first count it must appear that he unlawfully procured the discharge by Kehoe & Walker of the plaintiff. If the discharge merely resulted from a lawful act of the defendant, even though such lawful act was done with the intention of procuring the discharge of the plaintiff, the plaintiff cannot recover."

"It was lawful for the defendant as Vice-President and Manager of the Pensacola and Atlantic Railroad Company to refuse to furnish a side track gratuitously to Kehoe & Walker if they retained plaintiff in their employ or with an interest in their business, if there was no contract by the R. R. Co. to furnish it gratuitously."

"The mere fact that the discharge of the plaintiff by Kehoe & Walker resulted from the act of the defendant, does not constitute such a procurement by the defendant of the plaintiff's discharge as to make the defendant liable; in order to constitute such procurement the defendant must have had a design or purpose to cause the discharge and have done some act to carry out such design."

*W. A. Blount* for Appellant.

*Liddon & Carter* and *J. C. Avery* for appellee.

15

MR. JUSTICE RANEY delivered the opinion of the court:

I. In Bowen vs. Hall, 6 Law Reports, Q. B. Div., 333, decided in 1881, the English Court of Appeal held that an action lies for maliciously procuring a breach of contract to give exclusive personal service for a time certain provided damage accrues, and that to sustain such an action it is not necessary that the employer and employe should stand in the strict relation of master and servant. The person induced to break his contract had agreed to manufacture glazed brick and baths and not to engage himself to any one else for a term of five years. This decision is founded upon one of the chains of reasoning in Lumley vs. Gye, decided by the Queen's Bench in 1853, (2 E. and B., 2, 16,), though it repudiates the other. The chain of reasoning adopted is set forth, in Bowen vs. Hall, substantially as follows: Wherever a man does an act which in law and in fact is a wrongful act, and such an act as may, as a natural and probable consequence of it, produce injury to another, and which in the particular case does produce such an injury, an action on the case will lie. That if these conditions are satisfied the action does not the less lie because the natural and probable consequence of the act complained of is an act done by a third person, or because such act so done by a third person is a breach of duty or contract by him, or an act illegal on his part, or an act otherwise imposing an actionable liability on him. That though it has been said the law implies that the act of the third party, being one which he has free will and power to do or not to do, is his own willful act and therefore is not the natural or probable result of the defendant's act, and though this may be so in many cases, yet if the law were so to imply in every case it would be an implication contrary to manifest truth and

fact. That though it has been said that if the act of the third person is a breach of duty or contract, or is an act which it is illegal for him to do, the law will not recognize that it is a natural or probable consequence of the defendant's act ; yet, if this were so held in all cases the law would, in some instances, refuse to recognize what manifestly is true in fact. * * *. That merely to persuade a person to break his contract may not be wrongful in law or fact, still, if the persuasion be used for the indirect purpose of injuring the plaintiff or benefiting the defendant at the expense of the plaintiff, it is a malicious act which in law and in fact is a wrongful act, and therefore an actionable act, if injury issues from it * *. That it cannot be maintained that the breach of contract is not a natural and probable consequence of the act of persuading the third person to break his contract ; the breach is not only the natural and probable consequence, but by the terms of the proposition which involves the success of the persuasion, it is the actual consequence. That unless there be some technical doctrine to oblige one to say so, it seems impossible to say correctly, in point of fact, that the breach of contract is too remote a consequence of the act of the defendant, that the injury is, in such a case, in law as well as in fact, a natural and probable consequence of the cause, and there is no technical rule against the truth being recognized.

In Lumley vs. Gye a count in the declaration was for maliciously procuring an actress to break her contract (which was executory) to sing at plaintiff's theatre and nowhere else, and it was held by a majority of the court that an action would lie for the malicious procurement of a breach of contract, though not for personal services, if by the procurement damage was intended to result and did result to the plaintiff. See Haskins vs. Royster, 70 N. C., 60.

The chain of reasoning set forth in Bowen vs. Hall would support an action in behalf of an employe against a third party maliciously procuring his employer to discharge him from employment under a legal contract for a certain period pending such period. The principle applied is as applicable in behalf of an employe as in behalf of an employer so injured through the malicious interference of the third person. Whether, however, the same principles are applicable when the terms of contract or service are such that the employer may terminate them at his pleasure, without violating any legal right of the employe, is a question of more intricacy. There is no question but that where such a right to terminate the employment does exist, the mere presence or absence of malice in the breast of the employer in doing so is immaterial in so far as the employe having a right of action against him; for the simple exercise of a legal right is not dependent upon the nature of the motive with which it may be exercised. In Haywood vs. Tillson, 75 Me., 225, the decision is that an employer has the right to refuse to employ or retain in his service any person renting certain specified premises, and the owner of such premises has no cause of action against him for the exercise of such right, though such refusal was through malice or ill will to such owner; and in Payne vs. W. & H. Railroad Company *et al.*, 13 B. J. Lea, 507, (A. D. 1884,) the Supreme Court of Tennessee held that the mere posting of a notice by an employer to employes maliciously forbidding them to trade with a certain person therein named does not constitute slander or libel, and that it is not unlawful for a railroad company to discharge hands for trading with a certain merchant, unless thereby a contract between the company and employes is broken; even then no action lies to the merchant unless the notice be libelous. Where one does an act which is legal in itself and violates no right of

another person, it is true that the fact that the act is done from malice or other bad motive toward another, does not give the latter a right of action against the former. Though there be a loss or damage resulting to the other from the act, and the doer was prompted to it solely by malice, yet if the act be legal and violate no legal right of the other person there is no right of action. Phelps vs. Nowlin, 72 N. Y., 39 ; Chatfield vs. Wilson, 28 Vt., 49 ; South Royalton Bk. vs. Suffolk Bk., 27 Vt., 505 ; Harwood vs. Benton, 32 Vt., 724 ; Bradley vs. Fuller, 118 Mass., 239; Hunt vs. Simonds *et al.*, 19 Mo., 583 ; Jenkins vs. Fowler, 24 Penn. St., 308 ; Wheatley vs. Baugh, 25 Penn. St., 528 ; Orr vs. Home Mutual Ins. Co., 12 La. Ann., 255; s. c. 68 Am. Decs., 770 ; 8 Rob., 51 ; 4 Rob., 62 ; 12 O. S., 294 ; Acton vs. Blundell, 12 M. & W., 324. In Phelps vs. Nowlin, there was on defendant's land a spring which was surrounded by an embankment, the effect of which was to raise the water in a well upon plaintiff's land.　Defendant, not for his own benefit, but simply with intent to divert the water from plaintiff's well, dug a ditch through the embankment, thus restoring the water to its natural course, and having the effect to lower the water in the well to the plaintiff's injury.　It was held that the action, which was for damages and to restrain the diversion of the water, was not maintainable.　Such cases, though we do not question their correctness, should however not be construed so as to justify any unauthorized invasion of another's rights.

In Walker *et al.* vs. Cronin, 107 Mass., 555, the count was that plaintiff was a manufacturer of shoes, and for the prosecution of his business it was necessary for him to employ many shoemakers ; that defendant well knowing this did *unlawfully and without justifiable cause* molest him in carrying on said business, with the *unlawful* purpose of pre-

venting him from carrying it on, and *wilfully* induced many shoemakers who were in his employment, and others who were about to enter it, to abandon it without his consent and against his will, and that thereby the plaintiff lost their services and the profits and advantages which he would have derived therefrom, and was put to great expense to procure other suitable workmen and compelled to pay larger prices for work than he would have had to pay but for the said doings of the defendant, and otherwise injured in his business. It was objected *inter alias* that this count of the declaration did not show that the persons induced to leave plaintiff's employ did not have a right to do so, yet the count was held to show a cause of action, and the demurrer was overruled. In a note to §487 of Schouler on Domestic Relations, it is said that for a master to maintain an action it is enough if the service is one at will, if subsisting when interrupted. Salter vs. Howard, 43 Ga., 601 ; Sykes vs. Dixon, 9 A. & E., 244. In Rice vs. Manley, 66 N. Y., 82, one S. had contracted, by parol, to sell and deliver to plaintiff a quantity of cheese, but being made to believe by the fraud of the defendant that plaintiffs did not want the cheese, sold it to defendant. The contract was not binding under the statute of frauds, but would have been performed by S. had it not been for the fraud. It was held that the action was maintainable against the defendant. In Benton vs. Pratt, (2 Wend., 385,) where Seagraves & Wilson had contracted with plaintiffs to purchase of him, to be delivered at a future time, twenty hogs, and nothing had been done to make the contract binding under the statute of frauds, and while plaintiff was preparing to perform his contract, the defendant, knowing the fact, fraudulently represented to S. & W. that plaintiff did not intend to deliver his hogs and this induced

S. & W. to buy their hogs, and then S. & W. refused to take plaintiff's hogs, *solely because they had a full supply*, it was held that where a contract would have been fulfilled but for false and fraudulent representations of a third person an action for damages will lie against such person, although the *contract* could not have been enforced by action. " It is not material," says the opinion, " whether the contract of the plaintiff with Seagraves & Wilson was binding upon them or not; the evidence established beyond all question that they would have fulfilled it but for the fraudulent representation of the defendants." Green vs. Button, 2 C. M. & R., 707. In Walker vs. Cronin, *supra*, after quoting Conyer's Digest, (notes on case A,) as follows: " In all cases where a man has a temporal loss or damage by the wrong of another he may have an action on the case, to be repaired in damages," it is said " the intentional causing of such loss to another without justifiable cause, and with the malicious purpose to inflict it, is of itself a wrong." Carew vs. Rutherford, 106 Mass., 1 ; 11th East., 571, 574 * * *. " Thus everyone has an equal right to employ workmen in his business or service, and if by the exercise of this right in such manner as he may see fit, persons are induced to leave their employment elsewhere, no wrong is done to him whose employment they leave, unless a contract exists by which such other person has a legal right to the further continuance of their service. If such a contract exists, one who knowingly and intentionally procures it to be violated may be held liable for the wrong, although he did it for the purpose of promoting his own business" * *. "It is generally held that no action will lie against one for acts done upon his own land, in the exercise of his rights of ownership, whatever the motive, if they merely deprive another of advantage or cause loss to him without violat-

ing any legal right; what is the motive in such cases is immaterial, (citing Chatfield vs. Wilson; Frazier vs. Brown, *supra*,) but in Wheatley vs. Baugh, the suggestion " * * " that malicious acts without the justification of any right, that is, acts of a stranger resulting in like loss or damage, might be actionable," was approved. " Every one has a right to enjoy the fruits and advantages of his own enterprise, industry, skill and credit. He has no right to be protected against skill and competition, but he has a right to be free from malicious and wanton interference, disturbance or annoyance. If disturbance or annoyance comes as a result of competition, or the exercise of like rights by others, it is *damnum absque injuria*, unless some superior right by contract or otherwise is interfered with. But if it comes from the mere wanton or malicious acts of others without the justification of competition or the service of any interest or lawful purpose, it then stands upon a different footing and falls within the principle of the authorities first referred to " —i. e., Comyn's Digest, and others. See also as bearing on the general question, People vs. Fisher, 14 Wend., 1 ; and Rafael vs. Verelst, 2 Wm. Blackstone Reports, 1055, where it was held that trespass lay against defendant for procuring by awe, fear and influence, and contrary to his own inclination, a sovereign, independent, absolute prince to imprison the plaintiff. Old Dominion Steamship Company vs. McKinna, p. 208, vol. 35 ; Albany Law Journal, (March 12, 1887,) U. S. Circuit Court, So. Dist., N. Y., and cases cited.

From the authorities referred to in the last preceding paragraph, and upon principle, it is apparent that neither the fact that the term of service interrupted is not for a fixed period nor the fact that there is not a right of action against the person who is induced or influenced to terminate

the service or to refuse to perform his agreement, is of itself not a bar to an action against the third person maliciously and wantonly procuring the termination of or a refusal to perform the agreement. It is the legal right of the party to such agreement to terminate it, or refuse to perform it, and in doing so he violates no right of the other party to it, but so long as the former is willing and ready to perform, it is not the legal right, but is a wrong on the part of a third party to maliciously and wantonly procure the former to terminate or refuse to perform it. Such wanton and malicious interference for the mere purpose of injuring another is not the exercise of a legal right. Such other person who is in employment by which he is earning a living or otherwise enjoying the fruits and advantages of his industry or enterprise or skill, has a right to pursue such employment undisturbed by mere malicious or wanton interference or annoyance. Every one has a perfect right to protect or advance his business if in doing so he infringes no superior legal right of another.

II. The defendant, appellant, excepted to the following paragraph of the Judge's charge to the jury: " If the Pensacola & Atlantic R. R. Company had a contract with Kehoe & Walker to furnish a side track to their brick-yard, and the defendant refused to perform that contract, intending thereby to injure the plaintiff by having him discharged, then the defendant would be liable to plaintiff for damages according to the law and evidence."

This instruction does not embody as an essential either the idea of an actual discharge of the plaintiff by Kehoe & Walker, or of such a discharge maliciously and wrongfully procured by defendant, or of any actual damage sustained therefrom by the plaintiff ; but asserts that a refusal by Chipley to perform a contract of the railroad company with Kehoe & Walker, with the intent to have plaintiff

discharged, is of itself a ground of recovery by plaintiff. Assuming that the instruction was not erroneous in other respects the absence from it of the element of an actual discharge would alone be fatal to it. The mere intention to injure, however maliciously and wrongfully, does not create a right of action in the person for whom it is entertained. We think, moreover, that the charge should have been confined to the theory of the declaration, which is maliciously and wrongfully procuring one to violate his contract with another, and thereby causing the latter injury.

III. The Judge also charged the jury that " If the plaintiff entered into the employment of Kehoe & Walker upon the understanding that he was afterwards to be admitted into co-partnership with them he was an employe, and the defendant would be liable for procuring his discharge, even though there was no contract between plaintiff and Kehoe & Walker for a definite term of service or for stipulated wages." The defendant excepted. The case made by the declaration is that the employment was under an agreement by which it was to be continued for a long period of time. An agreement between the plaintiff and Kehoe & Walker for the continuance of the employment for a long period of time cannot be ignored as a feature of the case. This allegation means that the agreement entered into by them entitled the plaintiff, either expressly or by implication, to employment not only for a period of time but for a long period. It means that a period of time was agreed upon by them, and means that the period thus agreed on was, whether limited by months or years or otherwise, it is to be proved. The language implies that there was at least some point of time in the future, ascertainable from the terms of the agreement, up to which the employment was to extend. That the continuation of the employment for

any time was dependent upon the condition of a satisfactory performance of his duties by the plaintiff, would not be inconsistent with an employment for a particular period. If there was no agreement for any particular period of time, but the employment was one in which the agreement was that plaintiff should be given employment as long as he performed his work satisfactorily, and he has been discharged from it solely through the malicious and wrongful procurement of the defendant, and injury has resulted, he should have laid his case accordingly, but such is not the averment here. The fact that the actual damage may not be ascertainable in such a case would not defeat a recovery of at least nominal damages. The meaning of the language used in the declaration is that the terms of the agreement were such as to enable the court and jury to ascertain from them at least the minimum period for which the employment was to continue, and to show that this period was a long one. / How can it be said that the period of time for which the employment was to continue was a long one if the terms of the agreement did not indicate the length of it ?/ In view of the case made by the declaration we think the charge erroneous. .

The absence from the agreement of a clause fixing the wages at a certain or stipulated amount would not defeat a recovery. If the compensation, wages or benefit to be derived by the employe is such that its value can be ascertained, it is sufficient to sustain even compensatory damages.

IV. The jury were also instructed, " That if the plaintiff voluntarily left the service of Kehoe & Walker because of the conduct of the defendant in endeavoring to procure his discharge it would be equivalent to a discharge, and the defendant would be liable to the plaintiff as for procuring the discharge ; but if the plaintiff voluntarily left the ser-

vice ot Kehoe & Walker without reference to the conduct of the defendant, then the defendant would not be liable." The effect of this is that if the plaintiff, knowing of the alleged conduct of Chipley, voluntarily left the service of Kehoe & Walker on account of such conduct, yet without being in fact discharged by them, that such voluntary leaving their service constituted in law a discharge of him from their service by Kehoe & Walker. There must, we think, always be such a discharge of the plaintiff in a case like this, as amounts to a termination by his employer of the contract to the employe. The doctrine of the charge is that the ineffectual efforts of Chipley to induce or procure Kehoe & Walker to break their agreement with plaintiff is supplemented into a right of action by the plaintiff's terminating a relation or service which Kehoe & Walker had not terminated, notwithstanding Chipley's efforts. Chipley's efforts to procure Kehoe & Walker to break their contract with plaintiff, however malicious such efforts may have been, could not create a right of action of the character set up in the first count of the declaration, if unsuccessful. One cannot supply at his volition the deficiencies characterizing the conduct of another as a ground for either an action at law or suit in equity. My own termination of a contract, whether with or against the will of my employer, cannot constitute a breach of it by him or create a ground of action against him, or one who has unsuccessfully endeavored to induce him to break it. The discharge or dismissal by the *employers* in a cause like this must be clearly made out or the case will fail. The charge is erroneous.

V. The defendant's attorney requested that the following instructions should be given to the jury :

1st. "In order that the plaintiff may recover under the first count he must prove that the defendant unlawfully

procured Kehoe & Walker to discharge the plaintiff from an employment which existed by contract between plaintiff and Kehoe & Walker. If there was no contract, then even though the defendant unlawfully procured plaintiff's discharge he has suffered no legal injury."

2d. " Even if there was a contract, if such contract was terminable at the will of Kehoe & Walker, then the procurement by the defendant of the dissolution of such contract does not constitute a ground of action."

They were refused.

In view of the declaration in this case, we think the first of the above instructions was proper. The declaration shows a contract employment as general superintendent of a brick yard. Under an agreement, the same to continue for a long period of time, and one by which he earned the support of himself and his family. The second instruction is, for reasons stated in a former part of this opinion, erroneous.

VI. Defendant also requested the Judge to charge the jury as follows: " In order that the plaintiff may recover any damages for the procurement by the defendant that Kehoe & Walker should not take plaintiff into copartnership, there must have existed at the time of such procurement a legal contract by which Kehoe & Walker were bound to enter into a copartnership. If you find that there was merely an understanding that upon certain contingencies Kehoe & Walker and plaintiff were to enter into a copartnership, a procurement by the defendant of a withdrawal by Kehoe & Walker from such understanding will not entitle the plaintiff to recover for any damages resulting therefrom."

In regard to this instruction we may, in view of the fact that the case has to go back for a new trial, as well say that any actual damage probable to result to the plaintiff from a

loss of the promised partnership is entirely too uncertain to be estimated. The speculative profits of a new or proposed business, such as this, cannot be looked to as an element of actual or compensatory damage sustained by the plaintiff. V. & M. R. R. Co. vs. Ragsdale, 46 Miss., 458. Where, however, a defendant in a case like this knew, or believed, or had reason to believe that the employer had promised or did actually intend to admit plaintiff into partnership with him, the fact of such knowledge or belief of, or even reason to believe, such promise or intention, may be considered by the jury in passing upon the motive of the defendant, and in fixing exemplary damages.

VII. The following instruction was also requested by defendant and refused by the Circuit Judge: " So far as the plaintiff is concerned it was lawful for the defendant as Vice-President and General Manager of the Pensacola and Atlantic Railroad Company to refuse to furnish a side track gratuitously to Kehoe & Walker, if they retained plaintiff in their employ, or with an interest in their business, even though there was a contract by which the railroad company were to furnish such side track gratuitously, and such refusal does not furnish any ground of action for the plaintiff, if you find that he was not party to the contract." If A. acting in his own behalf, or in that of his principal, simply withhold a gratuity from B. because B. retains C. in his employ, or with an interest in his business, neither the employer nor the employe has any right of action, and in such case where there is a contract between the first person and the employer to furnish the latter any certain thing, and the first person refuses to perform or break his contract for the reason that the third person is employed by the second, the third person or employe has no right of action for such refusal or breach of contract; in neither case has any legal right of C. been violated, nor has C. any privity with

Jefferson Co. v. A. B. Hawkins, Trustee, &c.—Syllabus.

the contract. His assumed reason for the withholding or breach is not, either alone or with such withholding or breach, a ground of legal action, nor is proof of a mere withholding or violation of the contract by A., because of such retention of C., of itself proof of his procurement or persuasion of B. to make the discharge. We do not mean, however, to say that in an action such as that set up in the first count of this declaration it is not competent for the plaintiff to show that the withholding or breach was used by the defendant with the malicious purpose and as a means of procuring or persuading the employer to discharge the plaintiff, but we think it is competent to so show.

The instruction requested should, we think, have been given as it does not imply any such purpose of procuring a discharge of the plaintiff.

The judgment is reversed and a new trial granted.