BENJAMIN F. WOODY, Plaintiff, v. WILLIAM W. BRUSH and Others, Defendants.

Second Department, June 22, 1917.

**Municipal corporations — master and servant — liability of municipal employees for procuring discharge of subordinate by false and malicious reports to superior — privileged communications between employee and superior — malice — pleading — complaint.**

A supervising employee, acting in good faith, may truthfully report to his superior the acts, delinquencies, disqualifications and inefficiency of subordinate employees over whom he is charged with the duty of supervision, and thereby procure their discharge, without liability to the discharged employee, even though his act in so doing was promoted by ill-will, enmity or the desire to secure such discharge, for the reason that in so doing he is exercising a legal right and performing his legal duty.

But a superior employee has no right to falsely, without regard to the truth and actuated only by enmity and malice, make an unjustified and malicious report to a superior officer, for the purpose of accomplishing the removal of an honest, faithful and competent employee, who stands in the way of "graft," and he is liable for the damages occasioned by his malicious, false and unjustified act.

The privilege of making known to a superior the incompetence of a subordinate does not extend or protect beyond such statements as are made in the performance of duty, believing them to be true, and for words not material and spoken falsely and maliciously an action will lie.

The presence of malice in reporting to the common master or employer is immaterial providing the reporting employee keeps within his qualified legal privilege in exerting his influence.

Complaint in an action by an inspector in the department of water supply, gas and electricity of the city of New York against other employees of said department based solely upon intentional wrongful and malicious acts of the defendants, resulting in damages to the plaintiff, depriving him of his lawful employment and injuring his name and character and reputation, examined and *held*, to state a cause of action.

No rule of public policy prevents the maintenance of such an action nor does it interfere in any manner with the right of a superior employee to truthfully report to his superior or the common employer the acts of inefficiency of a coemployee, even though in so doing he is actuated by ill-will or a desire to procure the discharge of such subordinate.

MOTION by the plaintiff, Benjamin F. Woody, for a new trial upon a case containing exceptions, ordered to be heard at the Appellate Division in the first instance, upon the dismissal

of the complaint at the opening of a trial before a court and jury at the Kings County Trial Term in February, 1917.

When this action was brought on for trial the defendants moved to dismiss the complaint upon the ground that it did not set forth a cause of action; the motion was granted and an exception taken which was ordered to be heard by the Appellate Division in the first instance, entry of judgment being stayed.

The complaint alleges that the plaintiff was in the employ of the city of New York, filling the position of an inspector in the department of water supply, gas and electricity, with a salary of $1,800 per annum; that all of the defendants were employed in that department; Brush as deputy chief engineer; Gannon as mechanical engineer having charge of all the inspectors employed in the department, and Colligan as supervising or chief inspector; that in the regular course of his employment plaintiff was assigned to the duty of inspecting the plants and manufactured product of various concerns doing business with said city of New York, under contracts to furnish said department of water supply, gas and electricity with the material and supplies specified in and by such contracts, and required therein to conform to and comply with specifications prepared by or under the direction of the defendant Brush; that among the plants and products to the inspection of which the plaintiff was so assigned was that of the Kennedy Valve Company, which had a contract with said city for valves to be used in connection with its high water pressure; that in March, 1910, the commissioner of said department, who was its head, approved of an organization therein of an engineering bureau — including a minor bureau to have charge of the inspection of contracted-for material before delivery, and of inspectors at foundries, machine shops and other points of manufacture — and such organization was thereupon effected, the defendant Gannon given the supervision and direction of such bureau and the plaintiff directed to thereafter report to him; that thereafter the defendant Colligan was charged with and given the immediate supervision and superintendence of all work directly connected with the inspection of foundries connected with and forming part of the plants of contractors; that one Peck,

another employee of the city, was inspector at the plant of the Kennedy Valve Company in November, 1910, and rejected some of its products as not complying with the specifications and requirements of its contract; that after such rejection the products so rejected were doctored and altered for the purpose of deceiving inspectors thereafter examining them into passing the same as perfect although in fact defective, unfit for use, and not in accordance with contract specifications, which fact, with other deceptive and misleading methods and test bars employed by said company for the purpose of showing greater strength than was actually possessed by their manufactured products, were reported by Peck and the plaintiff to the defendant Colligan; that after the inspection and rejection of a number of valves manufactured by said company, the defendant Colligan called at the plant of said company and witnessed tests made of said valves, and was informed of the fraudulent and wrongful efforts of said company to doctor and cover up the defective parts of said valves exhibited to him; that shortly thereafter said Colligan requested both Peck and the plaintiff, as a personal favor to him, to reconsider and pass such rejected work, saying to them that it would be covered and not observable in the ground where it was to be used, and that "if you want to stay in the Department, you have got to have the engineers with you," but both Peck and the plaintiff refused to pass such work or valves; that thereafter Colligan requested plaintiff to deny the report made by said Peck to the commissioner of said defective work, stating that if plaintiff did so the engineers would protect him, and that if he did not stick to the engineers he could expect nothing from them, but plaintiff refused so to do; that thereafter plaintiff procured sample test bars used in connection with the valves manufactured by said company, together with sworn statements as to the manner of casting the same and of the giving of false values to the castings, which he placed before the chief engineer and the defendants Brush and Gannon. These allegations are followed by the averments:

"*Seventeenth.* Upon information and belief, that thereafter the defendants, Brush, Gannon and Colligan, wilfully and maliciously and without just cause or provocation, and by false reports and statements among others concerning this

plaintiff in connection with the work at said Kennedy Valve Company, and also with that done at the Luman Bearing Foundry, and particularly with the said test bars and plaintiff's statements in regard to the same made to the Commissioner of Water Supply, Gas & Electricity, brought about, caused and procured plaintiff's discharge from his said position of Inspector in said Department, said discharge being made on or about the 2nd day of July, 1913.

" *Eighteenth.* That thereafter, and after plaintiff had made application for reinstatement, to his said position, and while the said application was under consideration by the Commissioner of said Department, the defendant, Brush, wilfully and maliciously and intending thereby to prevent plaintiff's reinstatement, did, by false statements made by him concerning the plaintiff induce and procure the said Commissioner to reject plaintiff's application for reinstatement.

" *Nineteenth.* Upon information and belief, that plaintiff's discharge from his said position was wilfully and maliciously caused, procured and brought about by the defendants and each of them, through false and misleading statements and insinuations made against him, to the Commissioner of Water Supply, Gas & Electricity, and the Chief Engineer of the said Department, by the defendants and each of them; said defendants and each of them well knowing that the statements, and insinuations so made by them against this plaintiff, were false and malicious and were being made by them for the purpose of causing, procuring and bringing about plaintiff's discharge from his said position and from said Department.

" *Twentieth.* That by reason of the wilful and malicious acts of the defendants and each of them, in the premises, plaintiff lost his position as an Inspector in said department and the salary thereto attached, and has been greatly injured in his good name, credit and reputation, all to his damage in the sum of ten thousand ($10,000) dollars."

*Ralph G. Barclay* [*Robert Stewart* with him on the brief], for the plaintiff.

*Edward A. Freshman* [*Lamar Hardy, Corporation Counsel,* and *Thomas F. Magner* with him on the brief], for the defendants.

RICH, J.:

The contention of the defendants is that an action will not lie for a removal caused by false and malicious reports, made by a superior employee to the head of a department or common employer concerning the supervised employee, the argument being that it was the duty of the defendants to supervise the plaintiff and report to their superior, the commissioner, the faults, misconduct or inefficiency of the plaintiff, because of which the rule declared by this court in *Warschauser* v. *Brooklyn Furniture Co.* (159 App. Div. 81), and in the authorities cited, has no application. As they put it, " The broad rule of public policy forbids the penalization of free criticism of public officers. Although actions may lie for defamation, even by public officers, if privilege is exceeded, the courts will not go further and seek to punish those who have secured removals, even maliciously and by false statements. The danger to our institutions would be too great if such actions were permitted. All the more abhorrent it would be to public policy if those specifically charged with the duty of reporting delinquencies had their mouths closed by the prospect of such actions."

It is true, of course, that a supervising employee, acting in good faith, may truthfully report to his superior the acts, delinquencies, disqualifications and inefficiency of subordinate employees over whom he is charged with the duty of supervision, and thereby procure their discharge, without liability to the discharged employee, even though his act in so doing was prompted by ill-will, enmity or the desire to secure such discharge, for the reason that in so doing he is exercising a legal right and performing his legal duty; but no right is possessed by a superior employee to falsely, without regard to the truth, and actuated only by enmity and malice, make an unjustified and malicious report to a superior officer, for the purpose of accomplishing the removal of an honest, faithful and competent employee, who stands in the way of graft, nor can he do so without incurring liability for the damages occasioned by his malicious, false and unjustified act.

No case is called to our attention by the defendants, and I am aware of none, which sustains directly or inferentially such an abhorrent principle. In this connection we are

referred to *Lancaster* v. *Hamburger* (70 Ohio St. 156; 65 L. R. A. 856), in which it was held that a patron of a street railway company incurred no liability to a conductor by reporting to the superintendent of the company the conductor's misconduct toward a passenger, although in making the report he was prompted by ill-will and a desire to secure the conductor's discharge, the ground upon which such decision was based being that in so doing such patron was exercising his legal right, if not, indeed, performing his duty. This case does not sustain the defendants' contention, because the report was true, which is not the case presented by the complaint in the action at bar.

The defendants rely upon the proposition that their communications to the commissioner, alleged in the complaint and relied upon by the plaintiff as establishing his cause of action, were privileged communications because of their duty and privilege to make known to their superior the incompetency of their subordinate. This privilege is qualified, that is, it does not extend or protect beyond such statements as are made in the performance of their duty, believing them to be true (*Bingham* v. *Gaynor*, 203 N. Y. 27, 31), and for words not material and spoken falsely and maliciously an action will lie. (*Lathrop* v. *Hyde*, 25 Wend. 448.) The presence of malice in reporting to the common master or employer is immaterial, provided the reporting employee keeps within his qualified legal privilege in exerting his influence. In the case at bar the presence of the reasonable and justified performance of a duty is inconsistent with the fraud, malice and purpose of injury alleged to have actuated the defendants, and it is upon the allegations of the complaint which exclude any underlying duty or justifiable motive or privilege of the defendants in their performance of the acts complained of, that the plaintiff's right of action rests. The case presented is within the principle sustained by this court in *Warschauser* v. *Brooklyn Furniture Co.* (*supra*), in which, after stating the general rule applicable to this class of cases to be as declared in *Walker* v. *Cronin* (107 Mass. 555, 562), that " ' In all cases where a man has a temporal loss or damage by the wrong of another, he may have an action upon the case to be repaired in damages.' The intentional causing of such

loss to another, without justifiable cause, and with the malicious purpose to inflict it, is of itself a wrong," in adopting the rule declared in *Chipley* v. *Atkinson* (23 Fla. 206), Mr. Justice STAPLETON says: " In the well-considered case of *Chipley* v. *Atkinson* (23 Fla. 206) it was held that an action lies in behalf of an employee against a person who has maliciously procured the employer to discharge such employee from employment, where the period for which the employment was to continue is not certain, if damage result from the discharge, even though, from inability to ascertain the amount of the damage, a verdict for nominal damages only should result. In that case the court said: ' From the authorities referred to in the last preceding paragraph, and upon principle, it is apparent that neither the fact that the term of service interrupted is not for a fixed period nor the fact that there is not a right of action against the person who is induced or influenced to terminate the service or to refuse to perform his agreement, is of itself not a bar to an action against the third person maliciously and wantonly procuring the termination of or a refusal to perform the agreement. It is the legal right of the party to such an agreement to terminate it or refuse to perform it, and in doing so he violates no right of the other party to it, but so long as the former is willing and ready to perform, it is not the legal right, but is a wrong on the part of a third party to maliciously and wantonly procure the former to terminate or refuse to perform it. Such wanton and malicious interference for the mere purpose of injuring another is not the exercise of a legal right. Such other person who is in employment by which he is earning a living or otherwise enjoying the fruits and advantages of his industry or enterprise or skill, has a right to pursue such employment undisturbed by mere malicious or wanton interference or annoyance.' " This rule applies to employees of a municipal corporation, as well as the employees of a corporation or individual, and disinterested third persons who, for the sole purpose of injuring a subordinate employee, willfully and maliciously make false statements or reports, knowing them to be false, to his superior employee having the right and power to employ and discharge, or the common employer, resulting in actual damage to the subordinate employee,

without fault, neglect or dereliction of duty on his part and caused solely by, and resulting from such wrongful and malicious acts and false statements and reports of the supervising employee. The complaint alleges a cause of action against municipal employees — not officers — of this character, based solely upon intentional, wrongful and malicious acts of the defendants, calculated, intended to and resulting in damages to the plaintiff, depriving him of his lawful employment and injuring his good name, character and reputation, which were done and made by the defendants with the unlawful, sole and wholly unjustifiable purpose and intention of injuring and damaging him. No rule of public policy prevents maintaining such an action, nor does it interfere in any manner with the right of a superior employee to truthfully report to his superior or the common employer, the acts, conduct, habits, disqualification or inefficiency of a co-employee, personally known by him to exist, or, if based on hearsay, believed by him to be true, even though in so doing he is actuated by ill-will, enmity or desire to procure the discharge of such subordinate employee.

A cause of action is alleged and the exception to the dismissal of the complaint is sustained, costs to abide the event, and the action remitted to the Trial Term for trial upon the merits.

JENKS, P. J., STAPLETON, PUTNAM and BLACKMAR, JJ., concurred.

Exception to dismissal of the complaint sustained, costs to abide the event, and action remitted to the Trial Term for trial upon the merits.