**HARVEY CORPORATION, a Florida Corporation, v. UNIVERSAL EQUIPMENT CO., a Florida Corporation.**

29 So. (2nd) 700                                          January Term
March 28, 1947                                          Special Division A

*Ward & Ward,* for appellant.

*Andrew T. Healy* and *Thomas H. Anderson,* for appellee.

CHAPMAN, J.:

Involved in this appeal is the proper measure of damages to be awarded the plaintiff below against the defendant for unlawfully depriving and withholding from it the possession of Strath Haven Hotel, with furniture and fixtures, from July 20, 1944, until February 5, 1945. The question was raised in the lower court on exceptions to the Special Master's report, which were denied on final hearing, and again on petition for rehearing; and the soundness of the rule as approved and applied in the court below is challenged on this appeal.

The question arises out of a factual background substantially viz: the Harvey Corporation leased the seasonal hotel Strath Haven from Bertsol, Inc., for a period of six years, beginning in September, 1941, and ending in September, 1947, paying therefor an average annual rental of approximately $31,000.00. The hotel was fully furnished and equipped and a deposit of $30,000.00 to fully secure the performance by the

lessee of the lease was placed with Bertsol, Inc. The terms and several provisions of the lease were kept and observed from date of execution until December 10, 1942, when the Strath Haven hotel was requisitioned for training purposes by the United States Army. The lease as drafted and adopted by the parties failed to provide for such a contingency as a war by the United States. The Harvey Corporation, with the consent and approval of Bertsol, Inc., surrendered possession of the hotel to the Army. The Universal Equipment Co. acquired the title to the Strath Haven Hotel during the year 1944.

On December 10, 1942, Bertsol, Inc., landlord and Harvey Corporation, tenant, entered into a written agreement brought about by the commandeering by the Army of the hotel for military purposes. Pertinent parts of the last agreement are viz:

"3. The tenant's obligation to pay rent, or occupy or operate the premises, and all obligations otherwise imposed upon the tenant by the terms of the lease shall abate during the period of time the Government is in possession of the demised premises . . .

"7. (a) If the Government surrenders possession of the demised premises prior to November 1, 1945, then the lease and all of the tenant's obligations thereunder shall immediately become effective and shall be reinstated as of the date possession is so surrendered by the Government, and on such day, the tenant shall be obligated to resume possession of the demised premises and pay the rental required to be paid by the said lease agreement and the amendment thereto, including the relevant portions of this agreement.

"(b) The unexpired term of the lease, in such event, shall run from the day and month the Government vacates possession to the same day and month in the year 1947, provided, however, that in no event shall the termination date of the said term be prior to May 1, 1947, or after October 1, 1947. In this connection, in the event the unexpired term of the lease, as herein provided for, is less than a full twelve (12) months period, the amount of annual rental called for in the lease which the tenant is obligated to pay shall be decreased

proportionately to the extent that the said unexpired term is less than a full twelve (12) months period, and the amount of rental to be paid by the tenant for this period shall be computed in the same manner as is provided for the computation of rental in the event of abatement of rent for damage to the demised premises by fire or windstorm, as set forth on page 19 of the original lease agreement dated September 16th, 1941.

"9. In connection with the furniture, furnishings and equipment in the demised premises, it is understood that the owner pays for the cost of removing, storing and returning any part of such inventory that the Government requests be removed from the demised premises. If the tenant resumes occupancy of the premises, it is understood that the premises and the contents thereof shall be accepted by it in the same condition as is delivered by the Government without any obligation on the part of the owner to make any repairs or replacements whatsoever; provided, however, that if, under the terms of the lease between the owner and the Government, the Government is liable to the owner for any items of restoration, renovation, repair or replacement to the demised premises, then this tenant shall be deemed to be entitled to all of the benefits of such claim and the owner will afford the tenant an equal opportunity with the owner to negotiate with the Government to the end that the said claim may be settled or enforced most expeditiously and to the greatest benefit to the premises, and all of the benefits of such claim shall accrue to the tenant and shall be utilized to accomplish the restoration, renovation, repair or replacement to the demised premises, and the owner will do no act which will impair or impede the enforcement of such claim. If, pursuant to the terms of this agreement, the lease is cancelled on November 1, 1945, the liability of the tenant under the lease agreement to deliver said premises and the contents thereof to the owner shall be limited to making up any deficiency in inventory which existed as of the date the Government took possession of the hotel on November 6th, 1942. It is contemplated that the Government will purchase some of the kitchen or other equipment or furnishings in the demised premises in which event

the owner shall be obligated to replace the same if and when the tenant resumes occupany of the premises: provided, however, that the owner shall not be required to expend in making such replacements any sums in excess of the sum actually paid by the Government as the purchase price of the equipment and furnishings bought by it. In connection with the provisions in this paragraph, the tenant has simultaneously with the execution of this agreement initialed and identified thereby the inventory of the furniture and equipment in the demised premises on the date delivery of same was delivered to the Government and of the furniture and equipment removed at the request of the Government from said demised premises."

On November 6, 1942, the Army, negotiating exclusively with the owner, went into possession of the hotel and retained possession thereof, with all the furniture and equipment, until about July 20, 1944, when the possession of all the property so previously held and occupied was by the Army returned to the Universal Equipment Co., together with the approximate sum of $26,500.00, being the estimated costs necessary for the restoration of the hotel, furniture and equipment for damages thereto caused by the Army during the period of its occupancy and possession. The plaintiff below demanded immediate possession after the return thereof to the owner of the hotel, furniture and equipment in conformity with the terms and conditions of the controlling leases signed by the parties. The record discloses that the parties and counsel held meetings and discussed or considered their business differences incident to the hotel but these negotiations proved fruitless. Language employed by the defendant below in a letter to an official of the plaintiff, in part, is viz: "My attorney informs me that the alleged lease or agreement by the Harvey Corporation has been in effect cancelled due to non compliance and numerous violations of the express terms of the said lease by yourself and your predecessors."

The Harvey Corporation, on October 5, 1944, filed a bill of complaint against the Universal Equipment Co. alleging in part: (a) that it was unlawfully deprived of the possession of the hotel property by the defendant; (b) that the defendant

had had more than a reasonable time, at the time of the filing of the bill of complaint, in which to have delivered the entire property in conformity with their written agreements; (c) the defendant unlawfully had retained the $26,500.00 paid the defendant by the Army to be used in the restoration of the leased properties: (d) that the plaintiff was entitled to an accounting; (e) that an inventory of the furniture and equipment in possession of the defendant should be ascertained and the damaged items immediately repaired: (f) that the building should be repaired and the costs paid out of the funds delivered by the Army to the defendant; (g) missing pieces of furniture, furnishings and equipment should be replaced out of said funds; and prayed that a Receiver be appointed to take over all the hotel property, inclusive of the $26,500.00 paid by the Army to the defendant for a restoration of the property; and that the court fix and determine the damages and losses suffered by the plaintiff because of the wrong doing and arbitrary action of the defendant.

The Universal Equipment Co. moved the court to dismiss the bill of complaint on grounds (1) the bill of complaint was without equity; (2) the plaintiff had an adequate remedy at law; (3) the bill of complaint sought the possession of real property—was without equity because the plaintiff had an adequate remedy at law; (4) it affirmatively appeared from the bill that the plaintiff was in default of the lease with the rents agreed upon and other terms and conditions; (5) it did not appear that the defendant was obligated to repair the properties, nor that repairs have not been completed, and all the moneys received were so expended; (6) the plaintiff should pay into the registry of the court for the defendant the monthly rentals due under the lease. The motion to dismiss and application for the appointment of a receiver were heard together, when the motion to dismiss was denied and on October 13, 1944, a receiver appointed. The order was sustained by this Court on October 29, 1944, on application for an interlocutory writ of certiorari.

On October 28, 1944, the defendant filed an answer to the bill of complaint, and, among other things, contended that the plaintiff's lease to the hotel properties was null and void for

various reasons and therefore it was not the defendant's legal duty to surrender the possession of the properties to the plaintiff. Considerable testimony was taken by the parties, at the conclusion of which the special master made findings of fact and recommended as to the terms and provisions of the final decree to be entered by the chancellor.

Pertinent parts of the special master's findings and recommendations, which were ratified and approved by the final decree, are viz:

"After the defendant acquired possession of the premises from the United States Army it refused to deliver possession thereof unto the plaintiff and the plaintiff brought this action and a Receiver was appointed.

"It is contended by the defendant that it had a right to refuse to deliver possession unto the plaintiff lessee because it claims that the lease was breached because of the sale of the stock of the corporation, which the defendant claims amounted to a sale of the lease without the consent of the owner of the fee, and secondly, it is claimed that it was breached because of the application for and the securing of a Receiver for the property in question contrary to the provisions of the lease, (par. 23, on page 11 of Plaintiff's Exhibit No. 2) which reads as follows:

" 'Should there be a Receiver appointed for or against the Lessee to take charge of the premises . . ., the Lessor may at its opinion terminate and end this lease . . .'

"It is contended by the plaintiff that the lease was never breached; that it is entitled to possession and was entitled to it as of the date the Army re-delivered the property to the owner defendant. It is claimed by the plaintiff that a great deal of the inventory which was to go with the premises in question is missing. It is claimed that it is entitled to damages because of the failure and refusal of the defendant to deliver possession unto it at the time the Army re-delivered it to the defendant. It is likewise claimed that the money allowed by the Government for rehabilitation purposes to the defendant owner was not properly spent for rehabilitation purposes. In this connection, however, the defendant is not concerned with how the money was spent or what was spent

so long as the plaintiff is restored to full possession, with the building in good condition and the inventory completed.

### FINDINGS OF FACT BY THE MASTER

"As to the validity of the lease and right of possession which must be decided as one, your Master is firmly convinced that the lease in question and introduced in evidence and the extensions and amendments thereto are all good and valid, and vested property rights in the plaintiff corporation. It necessarily follows, therefore, that the plaintiff corporation is and was entitled to quiet occupation of the premises in question as of July 19th (1944), the date the property was delivered by the United States Army to the defendant.

"Your Master can find no merit whatsoever in the contention of the defendant that the lease was cancelled because of the sale of stock of the corporation as there was no provision contained in the lease against such an act, neither can your Master find any merit to the contention of the defendant that because of the appointment of a Receiver the lease was cancelled because the appointment of a Receiver was forced and brought about by the refusal of the defendant itself to deliver possession of the property, and there was no other protection to the plaintiff corporation pending the litigation, other than the appointment of a Receiver to protect its rights . . ."

In assessing the plaintiff's damages both the Special Master and Chancellor adopted the formula viz: allow the plaintiff as rental given by the Government for the sixty days' period from July 18, 1944, until September 18, 1944 $4,000.00; one-half of September, $350.00; October $700.00; November $1500.00; December $3500.00; total allowance until January 1, 1945, the sum of $10,050.00. After January 1, 1945 to February 5, 1945, when plaintiff was placed in possession, "the income derived from the operation of the hotel by the Receiver from January 1, 1945 to the date of delivery of possession, less 25% for operating expenses, which in exact figures, as shown by the Receiver's Report, is by way of room rentals the sum of $10,150.00 less 25%, leaving a balance of $7,590.38; that in addition to this figure the Receiver

received $7,600.00 for the renting of the cigar concession, therefore the amount of money which the plaintiff should be paid is $15,190.12". Total amount of damages due the plaintiff $25,240.12.

Paragraph 4 of the challenged decree is viz:

"4. IT IS FURTHER ORDERED, ADJUDGED AND DE-CREED that by way of damages the plaintiff do have and recover of and from the defendant the sums of money recommended in the Master's original report and supplemental report, to-wit: the sum of $25,240.12, said total figure being composed of the items of (a) $10,050.00 as recommended by the Master in his original report for damages for the months that possession of the premises in question was withheld from the plaintiff up to January 1, 1945, as shown by the original report of the Master herein and (b) the item of $15,190.12 as shown by the Master's supplemental report representing the sums received by the Receiver from January 1st, through February 4th, 1945, for room rentals, less twenty-five per cent thereof, plus $7,600.00 taken in by the Receiver for the rental of the cigar concession, all of which is shown by the Master's supplementary report."

Counsel for appellant points out that the plaintiff's lease was for a period of six years and no friction arose in the operation of the hotel until after the Army surrendered it to the defendant, with approximately $26,000.00 to be used to repair the property. The defendant wanted to cancel the old lease and write another. Plaintiff, after stubborn litigation, obtained possession of the property under a court decree. It cannot be disputed that the defendant withheld the hotel property from the plaintiff from July 18, 1944, until February 5, 1945. The sum of $25,240.12 allowed the plaintiffs as damages approximates an abatement of the rents due by the plaintiff to use defendant under the lease for the period of detention. We do not think the formula adopted and applied is a correct measure of damages.

The measure of damages recoverable in this, and similar cases, as approved by our adjudicated cases, is that the lessee can recover from the lessor for the breach of the contract to deliver possession of the leased premises, the difference, if any, between the rent contracted to be paid and the

actual rental value of the premises for the time of unlawful detention of the property. Prospective profits from businesses that the lessee expected to conduct in said premises are too remote and speculative—dependent upon too many contingencies—to be permissible of admeasurement of damages. Brooks Co. v. Long, 67 Fla. 68, 64 So. 452; Hodges v. Fries, 34 Fla. 63, 15 So. 682; MOSES v. Autuono, 56 Fla. 499, 47 So. 925, 20 L.R.A. (N.S.) 350; Rogers v. Standard Oil Co., 130 Fla. 674, 178 So. 427.

The weight of modern authority holds that interference with any contract amounts to a tort. In such cases the injured party has an action against the party in default upon the contract but he is not limited thereto—he may maintain an action against the wrongdoer who induced such breach. Chipley v. Stkinson, 23 Fla. 206, 1 So. 934, 11 Am. St. Rep. 367; Dade Enterprises v. Wometco Theatres, 119 Fla. 70, 160 So. 209.

Our case of Twyman v. Roell, 123 Fla. 2, 166 So. 215, laid down a yardstick for the measurement of damages for the breach of a partnership contract to grow crops for a period of five years on lands situated in Palm Beach County, Florida. The agreement was observed by the parties for the 1931-1932 crop season. Preparations to plant fifty acres of English peas were made for the 1932-1933 crop season pursuant to the partnership agreement when the appellee breached the agreement by declining to advance his part of the money necessary to grow the peas. English peas were not grown but substituted crops were and resulted in losses. Suit in chancery was filed for a partnership dissolution and for damages for defendant's breach of the contract incident to the growth of the English peas. The lower court held that profits on a crop of English peas were so speculative and uncertain, coupled with doubt as to measurement of damages, and, being in the nature of prospective profits, the plaintiff below could not recover.

On appeal we held that the lower court applied the improper rule as to the contemplated profits flowing from the planting of English peas, and in part said (text 123 Fla. 7-8) :

"Uncertainty of the amount or difficulty of proving the amount of damage with certainty will not be permitted to prevent recovery on such contract. If it is clear that substantial damages have been suffered, the imposibility of proving its precise limits is no reason for denying substantial damages altogether . . .

"The uncertainty which defeats recovery in such cases has reference to the cause of damage rather than to the amount of it. If from proximate estimates of witnesses a satisfactory conclusion can be reached, it is sufficient if there is such certainty as satisfies the mind of a prudent and impartial person . . ."

Counsel for appellee contend that the plaintiff below was not, as a matter of law, entitled to recover damages for the alleged unlawful retention of the possession of the hotel properties because (1) the plaintiff below applied to the court and obtained an order appointing a Receiver and placing him in possession of the property from November, 1944 until February 5, 1945, and therefore should not be awarded damages; (2) that the plaintiff below had a plain, adequate and complete remedy at law in obtaining possession of the property. Authorities are cited to sustain this contention. With reference to the plaintiff below having an adequate remedy at law, the answer is that these several contentions were presented and argued here when the case was heard on petition for interlocutory certiorari and this point was placed at rest when we sustained the challenged order of the chancellor below.

The argument is made that this Court should not uphold damages for the plaintiff below because the plaintiff was the movant in obtaining a court order appointing a receiver for the properties and during the period of time the Receiver was in possession damages for the unlawful detention were not only improper but unlawful. This contention overlooks (1) the retention by the defendant of the money paid by the Army to be used in the repair of the hotel properties; (2) the delays in repairing the property and supplying the missing items; (3) that the property involved was a seasonal or tourist hotel and obtained its business during the Winter months;

(4) the studied efforts of the defendant to rewrite by mutual consent the lease; (5) the several suggested items of the defendant that should be set out in the new lease (Tr. p. 84). Thus the conduct of the defendant forced the plaintiff into the courts for the protection of its lease, the demised premises, and other property interest in the lease.

Paragraph 4 of the challenged decree is reversed with directions for further proceedings in the court below not inconsistent with the views herein expressed.

THOMAS, C.J., TERRELL, J., and McNIELL, Associate Justice, concur.