175 So.2d 203 (1965)
PAUL'S DRUGS, INC., a corporation, and Phillip Renkoff, jointly and severally, Appellants,
v.
SOUTHERN BELL TELEPHONE & TELEGRAPH COMPANY, a corporation, Appellee.
No. 64-331.
District Court of Appeal of Florida. Third District.
May 25, 1965.
Shevin, Goodman & Holtzman, Miami, for appellants.
Walton, Lantaff, Schroeder, Atkins, Carson & Wahl and Carey A. Randall, Miami, for appellee.
Before BARKDULL, C.J., and TILLMAN PEARSON and HENDRY, JJ.
TILLMAN PEARSON, Judge.
Paul's Drugs, Inc. at one time had a contract with the Southern Bell Telephone and Telegraph Company whereby the Drug Store was authorized to accept payment of telephone bills as a neighborhood collection station for the convenience of the customers *204 of the Telephone Company. This arrangement was terminated by the Telephone Company. Thereafter, the Drug Store continued to make collections, stamp the bills paid and transmit the funds to the Telephone Company in lump sum, together with a list designating the customers making the payments. The Telephone Company objected to the procedure but the Drug Store continued to collect from its customers.
The Telephone Company instituted a complaint in the circuit court and prayed that an injunction be entered to prohibit the continued collection by the Drug Store of payments on the Telephone Company's bills and to require the Drug Store to inform its customers that it was not authorized to accept such payments. After trial a final decree granting the relief prayed for was entered and this appeal followed. We affirm.
The chancellor has fully set out his findings of fact. They are as follows:
"1. That in November, 1960, SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY entered into an agreement with the Defendant, PAUL'S DRUGS, INC., whereby the latter was appointed as one of the Telephone Company's several neighborhood Payment Agencies, and authorized to receive and remit to the Telephone Company payments made by other subscribers for telephone service in accordance with bills or statements rendered by the Telephone Company to such subscribers. A copy of said agreement is attached to the Complaint as Exhibit `A'.
"2. That the aforesaid agreement was cancelled by the Telephone Company, effective August 3, 1962, by written notice, a copy of which is attached to the Complaint as Exhibit `B'.
"3. That notwithstanding such termination and cancellation, PAUL'S DRUGS and RENKOFF either jointly or severally have persisted in continuing to accept payment of telephone bills from subscribers, payments so accepted being sometimes represented by the subscriber's checks and sometimes in cash.
"4. That the cash receipts have been commingled by PAUL'S DRUGS, INC., in a personal bank account maintained by PHILLIP RENKOFF, with funds collected for other utilities and companies and with personal funds of RENKOFF.
"5. That on several occasions, both before and after the cancellation of the aforesaid contract, the cash receipts have been transmitted to the Telephone Company by checks drawn against the personal account of RENKOFF, which were dishonored by the Bank on which drawn (although subsequently made good by the Defendants).
"6. That the Telephone Company advised PAUL'S DRUGS to cease and desist from accepting payments of telephone bills by subscribers. That notwithstanding such advice PAUL'S DRUGS and RENKOFF have continued to accept such payments aggregating over $6,000 in September and October of 1963, and continuing in substantial amounts to the date of this final hearing.
"7. That the reports of collections submitted by PAUL'S DRUGS to the Telephone Company are in a form necessitating additional work by Telephone Company employees. Said reports cover collections made over a period of several days and include collections made, on one occasion, ten days before transmittal.
"8. That on account of such delayed remittances by the Defendants, telephone subscribers, after having paid their accounts at PAUL'S DRUGS, but before remittance and receipt thereof by the Telephone Company, have been *205 notified that their accounts were delinquent and it would be necessary to discontinue telephone service. This has resulted in additional work by Telephone Company personnel and has adversely affected the relations between telephone subscribers and the Company.
"9. That PAUL'S DRUGS has maintained signs within and without the store soliciting the payment of utility bills, including payments from Telephone Company subscribers. One such sign was removed on February 27, 1964, but the Defendant RENKOFF testified that other signs remain posted.
"10. That the Defendants' admitted purpose of continuing to collect telephone bills is for the purpose of attracting customers to patronize PAUL'S DRUGS, INC., although the Defendants say they have made attempts to discourage such payments."
The conclusion drawn by the chancellor which is challenged by the appellant is set forth in paragraph 11 of the decree:
"11. That the above described actions by the Defendants constitute an invasion and interference of the contract relations between the Telephone Company and its subscribers and has made the performance of satisfactory telephone service more difficult on the part of the Company and unless discontinued, the Telephone Company will continue to be exposed to misunderstandings with such subscribers and potential losses which as an end result will be imposed upon all other subscribers through the rate making process required by law, either of which alternative results will cause irreparable damage preventable only by the interference of a court of equity."
The gist of appellant's argument on this appeal is that it has a legal right as the agent of its customers to accept payment from its customers for their telephone bills and to transmit the money received to the Telephone Company. As a corollary it is urged that the injunctive order interferes with appellant's right of contract with its own customers. Appellant says that it has a right to continue its practice of accepting payments on telephone bills and transmitting the payments to the Telephone Company until some damage to the Telephone Company has been demonstrated. In this connection it challenges that portion of the findings of the trial court which holds that actual damage was proved.
The appellee points out that its relations with its customers is an especially important adjunct of its business as a public utility. It urges that for the appellant Drug Store to hold itself out to the public as a place where telephone bills can be paid and then to delay for even a short period of time the payment to the Telephone Company results in unfortunate customer relations. The appellee further points out that there had been mix-ups in record keeping and upon one occasion a bad check was given by the Drug Store. The courts of this State have consistently adhered to the rule that interference with any contract is a tort and that in a proper case such interference may be the object of injunctive relief. Dade Enterprises v. Wometco Theatres, 119 Fla. 70, 160 So. 209 (1935).
A review of the record before us provides a substantial basis for the trial judge to properly have found that the actions of the appellant not only constituted an inconvenience to the Telephone Company but also built up in the minds of many telephone subscribers the erroneous conception that the Drug Store was the agent of the Telephone Company. We think the testimony in the record constitutes a sufficient basis for the finding made by the trial judge that the Drug Store was holding itself out to members of the public as an agent of the Telephone Company and that appellant's actions were not, as contended, exclusively as agent for the Drug Store's customers. Such a finding will not be set *206 aside on appeal if there is substantial evidence in the record to sustain it. Board of County Commissioners of Highlands County v. F.A. Sebring Realty Co., Fla. 1953, 63 So.2d 256.
We turn now to appellant's contention that the injunction was improperly granted because the acts complained of would not cause irreparable injury to the plaintiff. Initially, we must point out that it is not necessary that irreparable injury be already sustained in order for a court of equity to properly exercise its jurisdiction in granting injunctive relief, but only that a showing be made that there is a reasonable probability (as distinguished from a bare possibility) that such damage will be sustained. Davis v. Wilson, 139 Fla. 698, 190 So. 716 (1939).
The defendant's acts complained of here, under the circumstances of this case, give the appearance of the Drug Store acting on behalf of the Telephone Company contrary to the Company's wishes as evidenced by the terminated contract. The evidence presented was such that the chancellor properly concluded that the situation established would in all reason result in delay in the crediting of payments and difficulty in collecting accounts. These factors would in reasonable probability cause misunderstandings and rebillings to the telephone customers resulting in the loss of good will and impaired relations between the Telephone Company and some of its customers. We therefore hold that appellant's position that it has a legal right to perform this particular service for its customers at the expense of the Telephone Company is not sustainable.
A determination of the value of the loss, inconvenience and detriment to the appellee would be most difficult if not impossible, but the possibility of exact measure of damage is not an essential element of the right to injunctive relief. Appellant's point urging that it was error to deny their motion to dismiss the complaint is therefore of no avail. Other points raised by the appellant as to the sufficiency of the evidence have been discussed previously. We hold the record discloses sufficient evidence to support the relief granted.
Affirmed.