**BRUNSWICK CORPORATION,**
Appellant,

v.

**Harold VINEBERG et al., Appellees.**

**No. 22907.**

United States Court of Appeals
Fifth Circuit.

Jan. 11, 1967.

James E. Tribble, Samuel Powers, Jr., Blackwell, Walker & Gray, Miami, Fla., for appellant.

Louis M. Jepeway, Bart L. Cohen, Schwarz & Cohen, and Jepeway & Gassen, Miami, Fla., for appellees Harold Vineberg and Sky Bowl Enterprises, Inc.

Daniel Neal Heller, Miami, Fla., for appellee, Peter DeMet.

Walter Humkey, James S. Roth, Miami, Fla., Fowler, White, Gillen, Humkey & Trenam, Miami, Fla., of counsel, for appellee, Sky Corp.

Before BROWN, GEWIN and GOLDBERG, Circuit Judges.

GOLDBERG, Circuit Judge:

The initial transaction in this cause of action took place in the halcyon days of the bowling business. On April 11, 1961, Sky Bowl, Inc., ("Bowl"), a Florida corporation, admittedly controlled by defendants Vineberg and DeMet, Florida residents, entered into a conditional sales contract with Brunswick Corporation, a Delaware corporation with its principal place of business in Illinois, for the purchase of 32 bowling lanes and accessories. At the same time Bowl entered into a similar conditional sales contract with Brunswick Automatic Pinsetter Corporation for the purchase of 32 automatic pinsetters. Brunswick Automatic Pinsetter Corporation later merged into the Brunswick Corporation.

The lanes, pinsetters, and other equipment were installed in premises in Orlando, Florida, on which Bowl had a 20-year lease from the lessor, Sky Corporation ("Sky"), a Florida corporation.[1] After the equipment had been installed, Bowl operated a bowling business at the site. In the early months of 1964, Bowl fell behind in its payments, and Brunswick and Bowl's officers sought by negotiation to agree on another program of payment, but these negotiations failed.

Under the terms of the conditional sales agreements, the lanes, pinsetters, and accessories were to remain at the leased premises and were removable only by Brunswick upon the default of Bowl.[2] On July 23, however, after the failure of Bowl and Brunswick to renegotiate their contracts successfully, Bowl sent a letter to Brunswick advising it that Bowl had assigned its leasehold and sold all of its assets except the Brunswick equipment to Sky Bowl Enterprises, Inc., ("Enterprises") another Florida corporation; this letter further advised Brunswick to remove by July 31 the equipment which was the subject of the conditional sales contracts, or else that equipment would be removed and stored at Brunswick's expense. Brunswick did not act in response to this letter, and the equipment in question was then removed and stored by either Bowl or Enterprises, without Brunswick's consent. Bowl thereafter lapsed into economic quiescence.

Brunswick filed suit in District Court alleging that the removal of equipment was a breach of the conditional sales contracts, and that such removal was part of a willful scheme or conspiracy involving all of the defendants. The object of this scheme, according to the complaint, was to strip Bowl of its assets and thus of its ability to perform its contract with Brunswick, thereby allowing Bowl's successor, Enterprises, to purchase new bowling equipment from another source. The complaint charges that the defendants, Vineberg and DeMet, controlled both Bowl and Enterprises, and willfully, wantonly, and maliciously conspired to induce Bowl to break its covenant not to remove the Brunswick equipment, and to make a fraudulent transfer of its assets to Enterprises, which was voidable by Brunswick as a direct or indirect transfer of Bowl's properties to Vineberg and DeMet because Bowl should have held that property for the benefit of its creditor, Brunswick.

As to Sky Corporation, the lessor, the original complaint stated that Sky, "pursuant to the scheme or conspiracy herein alleged, agreed to an assignment of the said lease to [Enterprises] * * * which said lease was, by its terms, not

---

1. Despite the similarity in name, there is no identity of ownership between Sky Bowl, Inc., and Sky Corporation.

2. Paragraph 5 of the conditional sales agreement reads in part: "The Buyer shall not, without the written consent of the Seller, alter or modify said property in any respect or remove said property from the premises in which said property is originally installed; * * *."

assignable except with the consent of [Sky] * * * ", and that Sky received from Vineberg a personal guaranty of a year's rent for the leased premises.

All defendants moved to dismiss the complaint. The trial judge dismissed the complaint against Sky only, with leave to Brunswick to amend, and denied the other motions.

Brunswick then amended its complaint as to Sky, claiming that Sky knew of the "terms and purposes" of the other defendants' scheme, that Sky "was an essential element of such scheme and conspiracy", repeating that Sky's consideration for consenting to the assignment of the lease was the personal guaranty by Vineberg of one year's rent.

After this amendment, Sky again moved to dismiss and dismissal was again granted, this time with prejudice.

The other defendants, Vineberg, De-Met, and Enterprises, then answered, admitting Bowl's contracts with Brunswick, the breach of those contracts, the July 23 letter to Brunswick, and the entry by Enterprises into the new contracts.

All remaining defendants then moved for summary judgment. At this time the record consisted only of the complaint with attached documents, the answers, and three depositions taken of corporate officers of Brunswick by the defendants. Summary judgment was granted. Brunswick now appeals both the dismissal of the complaint against Sky and the granting of summary judgment favoring Vineberg, DeMet, and Enterprises. We hold that the dismissal and summary judgments complained of were error.

I. *The summary judgments in favor of Vineberg, DeMet, and Enterprises.* A summary judgment is properly granted only where there is "no genuine issue as to any material fact and * * * the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Neither of those conditions is present here.

█ The complaint's allegations of a scheme to divest Bowl of all of its valuable assets except the Brunswick equipment so that Brunswick's opportunity to collect on its debt was diminished, clearly bring the complaint within F.S.A. §§ 608.55 and 726.01,[3] which are both con-

3. "608.55 *Prohibited transfers to officers or stockholders; transfers after or in contemplation of insolvency.* No corporation which shall have refused to pay any of its notes or other obligations when due, nor any of its officers or directors, shall transfer any of its property to any of its officers, directors or stockholders, directly or indirectly, for the payment of any debt, or upon any other consideration than the full value of the property paid in cash. No conveyance, assignment or transfer of any property of any such corporation by it or by any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation shall be valid. Every person receiving by means of any such prohibited act or deed any property of a corporation shall be bound to account therefor to its creditors or stockholders. No holder of stock not fully paid in any corpo-

ration shall transfer it to any person in contemplation of the corporation's insolvency. Every transfer or assignment or other act done in violation of the foregoing provision of this section shall be void except in the hands of a purchaser for a valuable consideration without notice. The directors or officers of a corporation who shall violate or be concerned in violating any provision of this section shall be personally liable to the creditors and stockholders of the corporation of which they shall be directors or officers to the full extent of any loss such creditors and stockholders may respectively sustain by such violation."

"726.01 *Fraudulent conveyances void.* Every feoffment, gift, grant, alienation, bargain, sale, conveyance, transfer and assignment of lands, tenements, hereditaments, and of goods and chattels, or any of them, or any lease, rent, use, common or other profit, benefit or charge whatever out of lands, tenements, hereditaments or goods and chattels, or any of them, by writing or otherwise, and every bond, note, contract, suit, judgment and execution which shall at any time here-

cerned with conveyances in fraud of creditors. Livesay Industries, Inc., v. Livesay Window Co., 5 Cir. 1962, 305 F.2d 934.[4]

The complaint sounds also in the tort of inducing breach of contract. One of the alleged objectives of the conspiracy was the removal of Brunswick's equipment. Inherent in the efficacy of that conspiracy was the effective inducement of Bowl by the defendants to violate Bowl's covenant not to remove. This tort came into its own in Lumly v. Gye, 2 E11 & B1 216 (1853), and is now epitomized by Restatement, Torts, § 766.[5]

▮ The Florida courts give a broad and inclusive scope to this tort, which is firmly established there. We give here a condensed review of the cases to show the breadth of the rule: Chipley v. Atkinson, 1887, 23 Fla. 206, 1 So. 934 (defendant maliciously induced plaintiff's employer to discharge plaintiff); Dade Enterprises, Inc., v. Wometco Theatres, 1935, 119 Fla. 70, 160 So. 209 (plaintiff, a moving pictures exhibitor, had spent much money on advertising for first presentation of a coming moving picture, relying on its contract with the distributor; defendant, another exhibitor, induced the distributor to allow defendant

to exhibit the moving picture before plaintiff); Duval Laundry Co., v. Reif, 1937, 130 Fla. 276, 177 So. 726 (defendant employer discharged plaintiff and maliciously caused him to be blacklisted by other employers); Harvey Corp. v. Universal Equipment Co., 1947, 158 Fla. 644, 29 So.2d 700 (plaintiff tenant, forced to leave when U. S. Army requisitioned the leased premises, agreed in writing with landlord to retake possession under lease after Army left; the defendant successor Landlord refused to honor this agreement; the Supreme Court cited Chipley v. Atkinson, supra, and Dade Enterprises v. Wometco, supra, in holding defendant liable); Franklin v. Brown, Fla.App.1964, 159 So.2d 893 (plaintiff real estate broker can recover his commission from a purchaser who negotiated with broker but then bought the land directly from owner); Paul's Drugs, Inc., v. Southern Bell Telephone & Telegraph Co., Fla.App.1965, 175 So.2d 203 (plaintiff phone company obtained injunction against defendant drugstore's continuing to accept payment of its customers' phone bills after phone company terminated agreement allowing such payment; court found that the drugstore's delays and mixups with the collections interfered

after be had, made or executed, contrived or devised of fraud, covin, collusion or guile, to the end, purpose or intent to delay, hinder or defraud creditors or others of their just and lawful actions, suits, debts, accounts, damages, demands, penalties or forfeitures, shall be from henceforth as against the person or persons, or bodies politic or corporate, his, her or their successors, executors, administrators and assigns, and every one of them so intended to be delayed, hindered or defrauded, deemed, held, adjudged and taken to be utterly void, frustrate and of none effect, any pretense, color, feigned consideration, expressing of use or any other matter or thing to the contrary notwithstanding; provided that this section, or anything therein contained, shall not extend to any estate or interest in lands, tenements, heriditaments [sic], leases, rents, uses, commons, profits, goods or chattels which shall be had, made, conveyed or assured if such estate shall be, upon good consideration and bona fide, lawfully conveyed or assured to any per-

son or persons, or body politic or corporate, not having at the time of such conveyance or assurance to them made any manner of notice or knowledge of such covin, fraud or collusion as aforesaid, anything in this section to the contrary notwithstanding."

4. The New York cases of Bartle v. Finkelstein, 1963, 19 A.D.2d 256, 241 N.Y.S.2d 655; Salner Realty Corp., v. Nancy Lee Millinery, Inc., 1941, 262 App.Div. 491, 30 N.Y.S.2d 596, hold under a statute similar to FSA § 608.55, that transfer to a corporation owned and controlled by directors of the debtor corporation are "indirect" transfers to those directors.

5. "Except as stated in § 698 [dealing with alienation of affections], one who, without a privilege to do so, induces or otherwise purposely causes a third person not to (a) perform a contract with another, or (b) enter into or continue a business relation with another, is liable to the other for the harm caused thereby."

with the phone company's customer relations); Mays v. Stratton, Fla.App. 1966, 183 So.2d 43 (plaintiff discharged by new employer because of malicious and false information given to new employer by defendant former employer); Allen v. Reybourne, Fla.App.1966, 190 So.2d 825 (daughter recovered against stepmother for stepmother's inducing father to cut daughter out of will, even though daughter's cause of action against father's estate for breach of contract to leave daughter certain property failed).

This broad application by the Florida courts of the principles involved supports our belief that plaintiff has here set out a claim on which relief can be granted. The Florida courts have tended to apply as public policy the broad language of Dade Enterprises v. Wometco Theatres, supra:

"The weight of modern authority holds that interference with any contract amounts to a tort. * * *

"In such cases the injured party has an action against the party in default upon the contract, but he is not limited thereto. He may also maintain an action against the wrongdoer who induced such breach. * * *

"If one maliciously interferes with a contract between two persons, and induces one of them to breach the contract to the injury of the other, the injured party may maintain an action against the wrongdoer, and where the act was intentional, malice will be inferred. To do intentionally that which is calculated in the ordinary course of events to damage, and which in fact does damage, another person in his property or trade, is malicious in the law, and is actionable if it is done without just cause or excuse. * * *" 160 So. at 210.[6]

These are more than bare-bones pleadings. The meat thereon more than satisfies Rule 8. Compare Form 13, F.R. Civ.P. Defendants' claims that the pleadings are insufficient seem indeed to have been made "under the spell of local state practice", Arthur H. Richland Co., v. Harper, 5 Cir. 1962, 302 F.2d 324, 325.

"[T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests * * *."

Conley v. Gibson, 1957, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80. We are further convinced that the specific acts of fraud alleged here satisfy the requirement of F.R.Civ.P. 9(b).[7] Compare McGuire v. Sadler, 5 Cir. 1964, 337 F.2d 902, with Miami Beach Federal Savings & Loan Association v. Callander, 5 Cir. 1958, 256 F.2d 410. And see Sax v. Sax, 5 Cir. 1961, 294 F.2d 133.

The defendants argue that there could have been no scheme to induce breach of contract by removal of the equipment since the contract had already been broken by the failure of Bowl to pay the monthly installments. But the parties treated Bowl's default in payment as only a partial breach of the contract (Restatement, Contracts § 316), and therefore all of the rest of Bowl's obligations under the contract continued.

"The situation [of total anticipatory breach] must not be confused with one where there has been a material breach of contract which does not, however, indicate any intention to renounce or repudiate the remainder of the contract. In such a case the injured party has a genuine election offered him of

---

**6.** Of course where the contract sought to be interfered with is itself against public policy, this rule does not apply. Such was our holding in Sunbeam Corporation v. Masters of Miami, Inc., 5 Cir. 1955, 225 F.2d 191.

**7.** *"Fraud, Mistake, Condition of the Mind.* In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

continuing performance or of ceasing to perform, and any action indicating an intention to continue will operate as a conclusive choice, not, indeed, depriving him of any excuse for ceasing performance on his own part. * * * " 5 Williston, Contracts, § 1334, p. 3749–50 (Rev. ed. 1937). Frank Stamato & Co., v. Borough of Lodi, 1950, 4 N.J. 14, 71 A.2d 336; Tas-T-Nut Co., v. Continental Nut Co., 1954, 125 Cal.App.2d 351, 270 P.2d 43.

■ The defendants similarly argue that Bowl's failure to pay the installments had put Brunswick to an election of remedies: that Brunswick should have made its own removal of the equipment, or should have sued for the installments. Defendants say that because Brunswick failed to remove, it cannot now sue for damages for removal by defendants. This farcical amalgam of doctrines of election of remedies and estoppel will not stand because, as just stated, the failure to pay installments was only a partial breach and left the other rights and duties of the parties in force, including the obligation not to remove the equipment.

■ Brunswick had the right to insist on non-removal of the equipment and surely was under no duty to remove on the order of a defaulting debtor. The defendants cannot by their own contractual violations and torts impose their own notions of estoppel and election on Brunswick. One does not gain rights by committing wrongs.

■ Since upon partial breach Brunswick was not *obligated* to do anything to keep its rights alive, it cannot now be estopped by its failure to act at that time. Further, the doctrine of election of remedies applies only where the defendant is put to the choice of two or more inconsistent remedies—that is, remedies which would yield multiple recovery if more than one were granted. American Process Co. v. Florida White Pressed Brick Co., 1908, 56 Fla. 116, 47

So. 942, Perry v. Benson, 1957, Fla., 94 So.2d 819. In the present case there is nothing inconsistent about the remedy now sought by Brunswick because with no prior obligation to act, inaction was not election.

The defendants claim that Brunswick seeks by this suit to force the equipment on Bowl when Bowl no longer wants it. This is untrue, for Brunswick here seeks no relief against Bowl, but even if it were true it would be irrelevant to any issue now before this court.

■ The legal questions thus sufficiently raised by the complaint are not answered factually one way or the other by the attached documents and depositions. The attached documents comprise nothing more than the conditional sales agreements themselves, plus certain extension agreements. The depositions, taken by defendants, are of corporate officers of Brunswick who appear to have no personal knowledge of most of the details surrounding the breach by Bowl and what caused it. The only matters covered in the depositions are the failure of Bowl to pay Brunswick, the credit policies of Brunswick, the discussions between Bowl's officers and Brunswick which unsuccessfully sought renegotiation of the conditional sales agreements, all leading up to and climaxed by the letter of July 23, 1964. None of the deponents appeared to have personal knowledge about the removal of the Brunswick equipment, and none testified about the existence or non-existence of the alleged conspiracy. In fact, none of the deponents seems to have known anything about the basic allegations of this suit, and it would be fantasy to say that these depositions make it "quite clear what the truth is" (National Screen Service Corp., v. Poster Exchange, Inc., 5 Cir. 1962, 305 F.2d 647) and thereby justify summary judgment. Defendants argue that the strength of these depositions forces Brunswick to come forward with "specific facts showing that there is a genu-

**612**

ine issue for trial. F.R.Civ.P. 56(e).[8] But, as stated above, the central issues of inducing breach of contract and transfer in fraud of creditors are not even mentioned in the depositions. "A party opposing summary judgment need not come forward in any way if the moving party has not supported his motion to the point of showing that the issue is sham. The amendment introduces no change here." Kaplan, Amendments to the Federal Rules of Civil Procedure 1961–1963 (II), 77 Harvard L.Rev., 801, 827 (1964); 6 Moore, Federal Practice § 56.22 [2], p. 2821 (2d ed. 1965).

 Summary judgment is a lethal weapon, and courts must be mindful of its aims and targets and beware of overkill in its use. That we now can correct its misguided application here is no answer. This case now has been in suspended animation for a year and a half, and it tellingly mocks the "just, speedy, and inexpensive determination of every action" envisioned by Rule 1 of the Federal Rules of Civil Procedure.

 II. *The dismissal of the complaint as to Sky.* The amended complaint alleges that Sky knew of the scheme to interfere with Brunswick's contracts with Bowl and knew that its agreeing to the assignment of the lease to Enterprises would aid the scheme, and that it "intentionally joined" the other defendants in the scheme by agreeing to assign the lease, receiving, as part of the consideration for so agreeing, a personal guaranty of a year's rent from Vineberg. We hold that these allegations are sufficient. We can see no reason to hold that Sky's alleged participation in the interference with the contracts between Brunswick and Bowl is a matter of law nontortious under the broad Florida rule. Sky argues that it had a perfect legal right to assign its lease and therefore,

cannot be held liable for doing so. But " 'acts which are in themselves legal lose that character when they become constitutent elements of an unlawful scheme.' " Lessig v. Tidewater Oil Co., 9 Cir. 1964, 327 F.2d 459, 466, quoting Continental Ore Co., v. Union Carbide & Carbon Corp., 1962, 370 U.S. 690, 707, 82 S.Ct. 1404, 1415, 8 L.Ed.2d 777, 788. Accord, Franklin v. Brown, supra.

 Sky places even more weight on Brunswick's failure to plead according to Florida standards than do the other defendants. We reiterate that such reliance is wholly misplaced.

Reversed and remanded.

---

8. In 1963, Rule 56(e) was amended by the addition of these sentences: " * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."