W. SHARP, Judge.
Kenn-Air Corporation (Kenn-Air) appeals from a final judgment denying it any remedy in its breach of lease suit against the City of Palatka (City). It also appeals the post-judgment order which awarded the City $15,216.00 for attorney fees and costs, pursuant to the lease.[1] Kenn-Air argues *607 the trial court erred by directing a verdict for the City at the close of its case. We agree and reverse.
At trial, Kenn-Air presented evidence sufficient to establish the existence of a written lease between it and the City, and various acts by the City which could constitute breaches of the lease. On April 3, 1985, the parties executed a seven-year lease agreement, which was to take effect “on Feb. 1, 1985, or upon issuance of the Certificate of Occupancy for the maintenance hangar to be constructed on the leased premises by City, whichever shall later occur.” Kenn-Air was to conduct a fixed base operation at the Kay Larkin Airport. After the exterior of the hangar was finished, Kenn-Air was to build the interior. It also had various other tasks and obligations to perform over the lease term.
Prior to completion of the hangar by the City, the City asked Kenn-Air to occupy the property and pump fuel. Kenn-Air did so, by moving a small trailer onto the property, and commenced selling and pumping fuel. The parties followed certain provisions in the lease. However, Kenn-Air complained to the City that another fixed base operator at the airport, Palatka Aviation, was interfering with its operations, and was claiming prior lease rights to the property.
The certificate of occupancy for the hangar was finally issued on January 27, 1986, while Kenn-Air was in possession of the leased property. Kenn-Air commenced building the interior of the hangar, but had not completed all of its “covenants” pursuant to paragraph 14 of the lease. These included undertakings by Kenn-Air to repair and maintain the premises; to pay for sewer, electrical, telephone, water, gas, janitorial and garbage services; to insure lawful usage of the premises; to indemnify the City against any loss or damage; and to maintain comprehensive general liability insurance and fire insurance in certain amounts to protect itself as well as the City. These were to be ongoing obligations “during the term of this Lease Agreement.” [2]
*608 In early February of 1986, shortly after the written lease took effect, the City discovered an old map which disclosed that the property leased to Kenn-Air had been leased to Palatka Aviation. Since the Pa-latka Aviation lease would soon expire, the City and Kenn-Air tried to resolve the problem by modifying the lease as to its term, and various options to lease other parcels. Kenn-Air would then vacate the premises and return after the prior lease had expired.
Kenn-Air thought the lease had been modified to both parties’ mutual satisfaction. It later found out that the City passed the lease amendments with several material changes to the option provisions, which Kenn-Air found unacceptable. Kenn-Air then refused to further perform under the lease, and vacated the premises. It subsequently sued the City for damages.
In directing a verdict for the City, the trial judge found that the lease agreement between the parties never took effect, because Kenn-Air had not performed the var-. ious covenants in Paragraph 14, which it found were “conditions precedent” to the effectiveness of the lease. The trial court also relied on Kenn-Air’s failure to give the City notice of defects and an opportunity to cure, prior to vacating the premises and suing for breach. Neither ground is an adequate basis for directing a verdict in the City’s favor.
From the evidence produced at trial, and the lease document itself, Kenn-Air established that the written lease took effect on January 27, 1986, when the certificate of occupancy issued. The covenants in Paragraph 14 were duties and obligations Kenn-Air was required to perform during the term of the lease, and for which it could be held liable and put in default by the City, if it failed to perform them. But there is no evidence in this case that Kenn-Air had an opportunity to perform many, if any, of them, or that the City claimed it had breached one or more of them. Under Paragraph 9 of the lease, the City had various remedies if Kenn-Air defaulted, but the City was also required to give written notice of the default and the default had to continue ten days for rent or thirty days for other defaults. There may be various defenses here available to the City, but clearly these covenants were not “conditions precedent” to the effectiveness of the lease.
Kenn-Air also established prima fa-cie, that the City breached its obligations under the lease. Without question, the City was obligated to deliver to Kenn-Air *609 possession of the leased premises, which because of the prior lease, it was unable to do.[3] Damages for such a breach is a valid remedy.[4] Further, the City well may have breached its express covenant of “peaceful possession and quiet enjoyment” contained in paragraph 32 of the lease, which entitles a tenant to damages and may excuse a tenant from any obligations under a lease.[5]
We conclude that the trial court erred by directing a verdict in favor of the City. A verdict should be directed against a non-moving party only when the evidence is such that a verdict could not be supported as a matter of law. Every reasonable inference must be taken to favor the non-movant. Bittson v. Steinman, 210 So.2d 30 (Fla.3d DCA 1968). In this case, Kenn-Air established, de minimis, a prima facie cause of action for breach of the lease by the City. A directed verdict for the City was clearly erroneous.
The award of attorney fees and costs under the lease to the City as the “prevailing party” is therefore premature, as well as irreconcilable with the trial judge’s original judgment that no lease had been entered into. Accordingly, we reverse both the judgment and the costs and fee order and remand for further proceedings.
REVERSED AND REMANDED.
PETERSON, J., and SAWAYA, T.D., Associate Judge, concur.

. Paragraph 23 of the written lease agreement provided:
23. LITIGATION EXPENSES: In the event that either party is required to [sic] any or all of the terms of this Lease Agreement against the other party, the defaulting party shall pay all costs and expenses applicable thereto, in- *607 eluding a reasonable attorney’s fee, to the prevailing party.

. Paragraph 14 of the lease provides:
COVENANTS OF COMPANY: Except to the extent City may otherwise consent in writing, Company covenants that, during the term of this Lease Agreement, it shall:
(a) Provide for all routine, structural and foundational repair and maintenance for the Leased Premises and all operating facilities thereon.
(b) Pay for all water, sewer, electrical, telephone, janitorial, gas, garbage pickup services and all other services or utilities consumed by it on the Leased Premises in connection with its operations thereon.
(c) Make no unlawful, improper or offensive use of the Leased Premises or permit the same to be used contrary to any law of the State of Florida or ordinance or regulation of Putnam County, Florida.
(d) Upon termination of this Lease Agreement, deliver up the Leased Premises to City in good repair and condition, except for damages beyond the control of Company, ordinary wear, tear, decay and damage by the elements.
(e) Observe and obey all applicable laws, ordinances, rules and regulations promulgated and enforced by City, copies of which are attached hereto as Exhibit "F” and made a part hereof by reference, and by any other proper authority having jurisdiction over the conduct of fixed base operations at the Airport, except where material rights of Company conferred by this Lease Agreement are adversely affected, in which case Company shall have the option of terminating this Lease Agreement by written notice to City of same. Company shall be given advance notice of any proposed change or addition by City to such laws, ordinances, rules or regulations and an opportunity to be heard thereon.
(f) Indemnify and hold City harmless from any and all liability, loss, expense, claim or cause of action for any death, personal injury, illness, loss or property damage caused or occasioned by or resulting from the negligent acts or omissions on the part of Company, its officers, agents, servants and employees; provided, however, that City shall give Company prompt and reasonable notice of any such liability, loss, expense, claim or action and Company shall have the right to investigate, compromise and defend the same to the extent of its own interest.
(g) Purchase and maintain with insurers authorized to do business in the State of Florida: (i) such comprehensive general liability insurance for and in the joint names of Company and City, as co-insureds which shall provide protection against any and all loss, liability or expense by reason of accidents or activities occurring on the Leased Premises, in the combined single limit of Five Million ($5,000,-000.00) Dollars; and (ii) fire and extended *608 coverage, for and in the joint names of Company and City as co-insureds, in an amount adequate to cover the cost of replacement of all fixtures, decorations and improvements on the Leased Premises in the event of loss. Provided that the insurance required to be maintained by Company pursuant to this section is in full force and effect and remains so, City waives, releases and discharges company from all claims or demands whatsoever which City may have or acquire in the future arising out of damage to or destruction of the Leased Premises occasioned by standard extended coverage risks, whether such claim or demand may arise because of the negligence of Company, its agents or employees or otherwise, and City shall look to the insurance coverage only in the event of such loss or damage.
(h)In exercising any of the rights or privileges herein granted to it, not discriminate or permit discrimination on the grounds of race, creed, color or national origin against any person or group of persons in any manner prohibited by the regulations promulgated by the Secretary of Transportation of the Department of Transportation, as currently set forth or hereafter amended.
(i) Refrain from imposing or levying excessive, discriminatory or otherwise unreasonable charges or fees for any service or use of the Leased Premises.
(j) Pay any and all taxes, penalties and interest assessed, levied or charged by any proper governmental agency against Company's tangible personal property situated on the Leased Premises and ad valorem taxes assessed, if any; provided, however, that Company shall not be deemed in default of this obligation pending the outcome of any legal proceeding prosecuted or defended by it contesting such tax liability.
(k) Maintain the Leased Premises in a clear [sic] and neat condition and not accumulate or permit the accumulation of any trash, refuse or debris or anything unsightly or which creates a fire hazard or nuisance or causes inconveniences to adjoining properties.
(/) Maintain the grass and all landscaping on the Leased Premises.

. 34 Fla.Jur.2d, Landlord-Tenant § 47 at 206 (1982).

. Harvey Corp. v. Universal Equipment Co., 158 Fla. 644, 29 So.2d 700 (1947); Rogers v. Standard Oil Co., 130 Fla. 674, 178 So. 427 (1938); Leslie E. Brooks Co. v. Long, 67 Fla. 68, 64 So. 452 (1914).

.34 Fla.Jur.2d, Landlord-Tenant § 49 at 207 (1981); Wood v. Bowden, 100 Fla. 110, 129 So. 332 (1930).