**Maria Victoria Gonzalez ROCA, Plaintiff,**

v.

**ALPHATECH AVIATION SERVICES, INC., et al., Defendants.**

**Case No. 1:12–cv–23955–U.**

United States District Court, S.D. Florida.

July 24, 2013.

Christopher Nathaniel Cochran, Daniel T. Feld, Jamie H. Zidell, J.H. Zidell, P.A., Miami Beach, FL, for Plaintiff.

Juan Ricardo Serrano, Lisa Heller, Griffin Serrano, P.A., Fort Lauderdale, FL, for Defendants.

*ORDER ON SUMMARY JUDGMENT*

URSULA UNGARO, District Judge.

THIS CAUSE is before the Court upon Defendants' Renewed Motion for Final Summary Judgment, D.E. 26, filed May 29, 2012. Plaintiff filed its Response, D.E. 37, on July 12, 2013. Defendants filed their Reply, D.E. 39, on July 19, 2013. The Motion is now ripe for disposition.

THE COURT has reviewed the Motions and the pertinent portions of the record and is otherwise fully advised in the premises. Defendants argue that summary judgment must be granted in their favor because they are subject to the provisions of Title II of the Railway Labor Act and therefore exempt from paying Plaintiff in accordance with the overtime requirements of the FLSA. For the reasons discussed below, the Court disagrees.

## BACKGROUND

This is an action arising under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–216, for unpaid overtime wages. Plaintiff, Maria Victoria Gonzalez Roca, was employed by Defendant Alphatech Aviation Services, Inc. ("Alphatech")at all times relevant to this dispute. Defendant Giovanni Brullo is a corporate officer and co-owner of Alphatech. Plaintiff alleges that during the term of her employment with Alphatech, Defendant failed to compensate her at an overtime rate for any hours she worked in excess of 40 hours per week. The parties stipulate that Alphatech only compensated Plaintiff at her regular hourly wage, D.E. 26–1, at 2, 5, but Alphatech insists that it is exempt from FLSA's overtime wage compensation provisions.

Alphatech specializes in heavy-duty cleaning of airplanes operated by commercial and freight airlines. In addition to cleaning airplane interiors and exteriors, Alphatech personnel replace components, perform light maintenance, preventive maintenance, and carry out related servicing of the aircraft. D.E. 22–1. As explained by Plaintiff, Alphatech employees "leave the plane clean; all the bathrooms, the galleys, everything, seats, carpeting[,] .... leave like the shell of the plane." D.E. 25–1, at 13:13–16. In other words, cleaning is performed when an aircraft's cabin is completely disassembled. D.E. 24–1, at 24:25. This work is primarily performed at the Miami International Airport complex, in a facility owned by AAR Aircraft Services ("AAR"), though Alphatech's administrative work is performed out of its own office space adjacent to the airport. D.E. 22–1, at 35:3–6.

Alphatech does work for various air carriers, maintaining a separate contractual relationship with each. *See* D.E. 26–4. The work performed for each air carrier is executed in accordance with that air carrier's maintenance manual. D.E. 24–1, at 9:12–14. Each air carrier specifies the manner in which it desires for its planes to be cleaned. *Id.* at 17:17–18. Alphatech employees sometimes work on the same exact model plane for two different air carriers and nevertheless perform their assignments differently, in accordance with each air carrier's manual for that air craft. *Id.* at 17:19–22. The air carriers separately contract with AAR to inspect and certify the work that Alphatech performs. *Id.* at 15:10–13, 16:15–19. AAR "professors" are also responsible for administering the air carrier-specific training that Alphatech personnel must receive before servicing an aircraft. The air carrier representatives "walk [through the plane], they turn around, and they leave." D.E. 15:9–10. Defendant Brullo testified that he could not remember the names of any air carrier supervisors because they change all the time, coming and going with the particular aircrafts that Alphatech personnel service. D.E. 23–1, at 29:19–22.

Plaintiff's supervisor at the time of her termination was Jorge Valle. D.E. 24–1, at 7:10–12. Plaintiff herself was promoted to what is, functionally, a supervisory position. In this position, Plaintiff would assign cleaners to work specific parts of an aircraft interior, would check the cleaner's work, and would then present it to an AAR inspector. *Id.* 9:18–22. Valle was responsible for determining Plaintiff's shifts. D.E. 23–1, at 10:1–4. He was responsible for notifying Plaintiff of her work dates and hours, and that notification was usually given a day in advance. D.E. 22–1, at 17:21. Alphatech has no company policy with respect to how many cleaners need to be on call at a given time. D.E. 23–1, at 10:5–7. Valle, as Plaintiff's supervisor, determined how many employees worked with Plaintiff on a particular assignment at a given time. *Id.* at 31:2–8.

Guillermo Pichardo and Giovanni Brullo are equal co-owners of Alphatech. D.E. 22–1, at 12:12–18. Pichardo is not a party to this action. Pichardo and Brullo have final authority with respect to employee termination. According to them, Plaintiff was terminated as part of a layoff of the interior department when demand for aircraft interior work dried up. *Id.* at 15:13–14. Brullo and Pichardo were also responsible for authorizing pay raises. D.E. 23–1, at 18:14–18. Alphatech hires its employees independent of the individual contracts it holds with its air carrier clients. Those employees remain employed by Alphatech even after individual client relationships end. D.E. 22–1, at 30:18–23. Alphatech's clients do not have a say in how much Alphatech's employees are paid. *Id.* at 33:12–14. Alphatech's clients do, however, check the training file and resume of each Alphatech employee selected by Alphatech to work on a given assignment. *Id.,* at 30:12–15. When an air carrier representative is dissatisfied with the work being performed by an Alphatech employee, the representative notifies that employee's Alphatech supervisor. The supervisor then reports the complaint to Pichardo or Brullo. Pichardo and Brullo would instruct Alphatech supervisors to discuss the matter with the air carrier representative in an attempt to "convince him" to allow the employee to stay on the assignment. D.E. 23–1, at 14:1–2.

### LEGAL STANDARD

Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. When determining whether the moving party has met this burden, the Court must view the evidence and all factual inferences in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Rojas v. Florida,* 285 F.3d 1339, 1341–42 (11th Cir.2002).

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of proving that no genuine issue of material fact exists, the non-moving party must make a showing sufficient to establish the existence of an essential element of that party's case and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Poole v. Country Club of Columbus, Inc.,* 129 F.3d 551, 553 (11th Cir. 1997); *Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

If the record presents factual issues, the Court must not decide them; it must deny the motion and proceed to trial. *Envntl. Def. Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir.1981).[1] Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co. v. Cont'l Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir.1969). If reasonable minds might differ on the inferences arising from undisputed facts, then the Court should deny summary judgment. *Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc.,* 669 F.2d 1026, 1031 (5th Cir.1982); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[T]he

---

1. Decisions of the United States Court of Appeals for the Fifth Circuit entered before October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981).

dispute about a material fact is 'genuine,' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes,* 398 U.S. at 160, 90 S.Ct. 1598. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or are not otherwise in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg,* 370 F.2d 605, 611–12 (5th Cir.1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. 2505.

### DISCUSSION

The question presented by this Motion is whether Plaintiff is an "employee of a carrier by air" for purposes of the FLSA's air carrier exemption. Under the FLSA, employers are required to pay their employees at overtime rates for work in excess of 40 hours per week. *See* 29 U.S.C. § 207. However, certain classes of employers are exempt from this overtime requirement. Thus, the air carrier exemption removes from coverage "any employee of a carrier by air subject to the provisions of Title II of the Railway Labor Act." *Id.* § 213(b)(3). Title II of the Railway Labor Act ("RLA"), in turn, covers "every common carrier by air ..., and every air pilot or other person who performs any work as an employee or subordinate official of such

carrier or carriers, subject to its or their continuing authority to supervise and direct the manner of rendition of his service." 45 U.S.C. § 181.

■ Defendants have failed to show that Plaintiff is exempt from overtime coverage. The application of an exemption under the FLSA is an affirmative defense on which the employer has the burden of proof. *Corning Glass Works v. Brennan,* 417 U.S. 188, 196–97, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974). The Eleventh Circuit has found that Title II of the RLA "is certainly unambiguous" in scope, *Valdivieso v. Atlas Air,* 305 F.3d 1283, 1287 (11th Cir.2002), yet Defendants urge the Court to find that Plaintiff qualifies as an air-carrier employee under a two-pronged conjunctive test promulgated by the National Mediation Board ("NMB")[2] in cases where the employer does not itself fly aircraft. Plaintiff no more satisfies this two-part test than she does the plain text of the subject exemption. Under the NMB's two-pronged conjunctive test, an employee is covered by the air-carrier exemption if: (1) the nature of the work is that traditionally performed by employees of air carriers (the "function" test); and (2) the employer is directly or indirectly owned or controlled by or under common control with an air carrier (the "control" test). *Verrett v. The SABRE Grp.,* 70 F.Supp.2d 1277, 1281 (N.D.Okla.1999). Both prongs must be satisfied in order for the RLA exemption to apply. Here, neither prong is satisfied.

### 1. Function Test

■ Defendants have not shown that the work performed by Alphatech employees is of the sort traditionally performed

---

**2.** The NMB has primary jurisdiction to determine the scope of the RLA. *Thibodeaux v. Exec. Jet Int'l, Inc.,* 328 F.3d 742, 746 n. 6 (5th Cir.2003). While lower courts have adopted the NMB's function-and-control test and treat NMB analyses of the test persuasive in certain instances, courts are not bound by the categorical determinations made by the NMB under this test.

by air-carrier employees. Indeed, Defendants' own witnesses have severely undercut their position. Mr. Pichardo testified that the air carriers hire outside contractors to perform the sort of heavy-duty cleaning work performed by Alphatech. When Alphatech works on an aircraft, it does so for an extended period of time, rather than between scheduled flights. In fact, Alphatech's witnesses repeatedly clarified at deposition that the company's work is not at all akin to the rapid cabin cleanup performed by air carrier personnel between flights. Indeed, Defendants have not presented any evidence tending to show that the work performed by Alphatech is *ever* performed by air-carrier employees, let alone that it is "traditionally" performed by those workers.

The RLA's definition of a "carrier" sheds additional light on what should be considered work traditionally performed by carrier employees. Under the RLA, the term "carrier" includes actual carriers as well as "any company ... which operates any equipment or facilities or performs any service (other than trucking service) in connection with the transportation, receipt, delivery, elevation, transfer in transit, refrigeration or icing, storage, and handling of property transported." 45 U.S.C. § 151. The focus, then, tends to be on companies performing the auxiliary functions of loading, unloading, and shipping to and from carriers' depots and terminals for the ultimate transportation of whatever is being carried in interstate commerce.

What Defendants *have* presented in their defense are NMB decisions purporting to hold that aircraft cleaning is a function traditionally performed by air-carrier employees. The Court finds these non-

precedential decisions to be distinguishable and otherwise unpersuasive.[3] Defendants also rely on *Moyano v. Professional Contractors Services, Inc.*, No. 1:07–cv–22411 (S.D.Fla. Mar. 7, 2008), a case involving mechanic contractors. *Moyano* offers little analysis under either prong, but does rely on the NMB's analysis in *In re Empire Auto Center, Inc.*, 33 NMB 3, 2005 WL 3089356 (Oct. 13, 2005). In that case, the employees also worked for an independent contractor and performed their tasks according to maintenance manuals provided by the air-carrier clients. 2005 WL 3089356, at *6. However, Empire's chief financial officer testified that Empire employees performed maintenance work identical to maintenance work performed by aircraft employees employed by commercial air carriers. Alphatech's owner, by contrast, acknowledges that the work performed by Alphatech is traditionally contracted out by the air carriers. Moreover, the nature of the work at issue in *Empire* does not at all appear to be similar to the work Plaintiff performed while at Alphatech. Empire's employees all fell into one of four categories: exhibit air frame and power plant mechanic; non-destructive test technician; aircraft sheet metal technician; and aircraft avionics and electrical mechanic. *Id.* at 10. These maintenance and repair operations are similar to the work at issue in *Moyano*, but not similar to the work performed by Plaintiff. The Court finds that Defendants have failed to show that Plaintiff satisfies the function prong of the NMB test.

### 2. Control Test

■ Defendants' argument that Alphatech's air carrier clients indirectly control the company's operations would convert

**3.** *E.g., In re Evergreen Aviation Ground Logistics Enters.*, 25 NMB 460 (Sept. 22, 1998) (wholly-owned subsidiary of holding company that also owned air carriers); *In re Sky Valet,* 23 NMB 155 (Mar. 20, 1996) (contractor performing janitorial services at terminals and in aircraft between flights).

most independent contractors into "carriers" for purposes of the RLA, so long as their *clients* are air carriers. But entering into a contractual relationship, while perhaps necessary, is certainly not sufficient to satisfy the control test. Courts find that carriers control a contractor's employees "[w]here the carrier controls the details of the day-to-day process by which the contractor provides services—for example, the number of employees assigned to particular tasks, the employees' attire, the length of their shifts, and the methods they use in their work." *Cunningham v. Elec. Data Sys. Corp.*, No. 06–3530, 15 Wage & Hour Cas.2d (BNA) 1891, 2010 WL 1223084, at *6 (S.D.N.Y. Mar. 31, 2010) (citing *In re Ogden Aviation Serv.*, 23 NBM 98, 104 (Feb. 5, 1996)). Defendants insist that the air carriers have ultimate control over Alphatech employees because they have an absolute say over the means by which their aircrafts are cleaned, and because individual Alphatech employees must be approved to work on each given aircraft. But Defendants' deposition testimony establishes that the air carriers have absolutely no control over what Alphatech pays its employees, when and how they are promoted or given pay raises, which shifts they work, how many hours they work per shift, or how many employees are scheduled to work on an aircraft at once.

Meticulous work instructions and prior approval of an independent contractors' employees will not convert those employees into a carrier's employees for RLA purposes. *See Dobbs Houses, Inc. v. N.L.R.B.*, 443 F.2d 1066, 1070 (6th Cir. 1971). In *Dobbs Houses*, the court found that while an airline caterer was "engaged in a business which requires it to please some very meticulous and demanding cus-

tomers, that fact alone does not establish their 'control directly or indirectly' of it or its employees." *Id.* at 1072. In so finding, the Sixth Circuit distinguished the case of a catering company employed by a rail carrier under circumstances more indicative of "control." It found that control was exercised in that case because: the catering company could not do any work for any other client except by the carrier's explicit permission; the carrier reimbursed the caterer for the total cost of its workers' wages; the carrier had the explicit right to discharge the caterer's employees; and the catering employees were directly subject to the carrier's supervision. *Id.* at 1071. None of those factors were present in the *Dobbs Houses* case, and none are present here.

## CONCLUSION

The Court holds that Defendants have not shown that summary judgment should be granted in their favor. Defendant Alphatech is not a carrier, and Plaintiff's work fails both prongs of the NMB's function-and-control test for determining which non-carrier employees are exempt from overtime coverage. Moreover, the Court finds that, on the basis of this record, there is no genuine issue of material fact as to whether Defendants are exempt from compensating Plaintiff for overtime work—they are not. However, the Court will await Defendants' response in opposition to Plaintiff's Motion for Partial Summary Judgment, D.E. 38, before disposing of that separate issue. Accordingly, it is

ORDERED AND ADJUDGED that the Motion, D.E. 26, is DENIED.