**Maria Victoria Gonzalez ROCA, Plaintiff,**

v.

**ALPHATECH AVIATION SERVICES, INC., et al., Defendants.**

**Case No. 1:12–cv–23955–U.**

United States District Court, S.D. Florida.

Aug. 20, 2013.

Christopher Nathaniel Cochran, Daniel T. Feld, J.H. Zidell, P.A., Jamie H. Zidell, Miami Beach, FL, for Plaintiff.

Juan Ricardo Serrano, Lisa Heller, Griffin Serrano, P.A., Fort Lauderdale, FL, for Defendants.

## ORDER ON SUMMARY JUDGMENT

URSULA UNGARO, District Judge.

THIS CAUSE is before the Court upon Plaintiff's Motion for Summary Judgment, D.E. 38, filed on July 12, 2013. Defendants filed a Response, D.E. 47, and Plaintiff filed a Reply, D.E. 49. The Motion is now ripe for disposition.

THE COURT has reviewed the Motions and the pertinent portions of the record and is otherwise fully advised in the premises. The Court previously denied Defendants' motion for summary judgment asking that the Court rule that Plaintiff is exempt from overtime coverage under the FLSA because Alphatech is subject to Title II of the Railway Labor Act. *See* D.E. 41. Now Plaintiff argues that Defendants cannot show that she is an exempt employee and that the Court should enter partial summary judgment on Defendants' exemption defense. For the reasons discussed below, the Court agrees with Plaintiff.

## BACKGROUND

This is an action arising under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–216, for unpaid overtime wages. Plaintiff, Maria Victoria Gonzalez Roca, was employed by Defendant Alphatech Aviation Services, Inc. ("Alphatech")at all times relevant to this dispute. Defendant Giovanni Brullo is a corporate officer and co-owner of Alphatech. Plaintiff alleges that during the term of her employment with Alphatech, Defendant failed to compensate her at an overtime rate for any hours she worked in excess of 40 hours per week. The parties stipulate that Alphatech only compensated Plaintiff at her regular hourly wage, D.E. 26–1, at 2, 5, but Alphatech insists that it is exempt from FLSA's overtime wage compensation provisions.

The relevant facts [1] are as follows: Alphatech specializes in heavy-duty cleaning of airplanes operated by commercial and freight airlines. In addition to cleaning

---

1. These facts are undisputed unless otherwise noted.

airplane interiors and exteriors, Alphatech personnel replace components, perform light maintenance, preventive maintenance, and carry out related servicing of the aircraft. D.E. 22–1. As explained by Plaintiff, Alphatech employees "leave the plane clean; all the bathrooms, the galleys, everything, seats, carpeting[,] .... leave like the shell of the plane." D.E. 25–1, at 13:13–16. In other words, cleaning is performed when an aircraft's cabin is completely disassembled. D.E. 24–1, at 24:25. This work is primarily performed at the Miami International Airport complex, in a facility owned by AAR Aircraft Services ("AAR"), a non-affiliated company not party to this action. D.E. 22–1, at 35:3–6. Alphatech's administrative work is performed out of its own office space adjacent to the airport. *Id.*

Alphatech does work for various air carriers, maintaining a separate contractual relationship with each. *See* D.E. 26–4. The work performed for each air carrier is executed in accordance with that air carrier's maintenance manual. D.E. 24–1, at 9:12–14. Each air carrier specifies the manner in which it desires for its planes to be cleaned. *Id.* at 17:17–18. Alphatech employees sometimes work on the same exact model plane for two different air carriers and nevertheless perform their assignments differently, in accordance with each air carrier's manual for that aircraft. *Id.* at 17:19–22. The air carriers separately contract with AAR to inspect and certify the work that Alphatech performs. *Id.* at 15:10–13, 16:15–19. AAR "professors" are also responsible for administering the air carrier-specific training that Alphatech personnel must receive before servicing an aircraft. The air carrier representatives "walk [through the plane], they turn around, and they leave." D.E. 15:9–10.

According to Brullo, the air carrier supervisors change all the time, coming and going with the particular aircrafts that Alphatech personnel service. D.E. 23–1, at 29:19–22.

Plaintiff's supervisor at the time of her termination was Jorge Valle. D.E. 24–1, at 7:10–12. Plaintiff herself was promoted to what is, functionally, a supervisory position. In this position, Plaintiff would assign cleaners to work specific parts of an aircraft interior, would check the cleaner's work, and would then present it to an AAR inspector.[2] *Id.* 9:18–22. Valle was responsible for determining Plaintiff's shifts. D.E. 23–1, at 10:1–4. He was responsible for notifying Plaintiff of her work dates and hours, and that notification was usually given a day in advance. D.E. 22–1, at 17:21. Alphatech has no company policy with respect to how many cleaners need to be on call at a given time. D.E. 23–1, at 10:5–7. Valle, as Plaintiff's supervisor, determined how many employees worked with Plaintiff on a particular assignment at a given time. *Id.* at 31:2–8.

Guillermo Pichardo and Giovanni Brullo are equal co-owners of Alphatech. D.E. 22–1, at 12:12–18. Pichardo is not a party to this action. Pichardo and Brullo have final authority with respect to employee termination. According to them, Plaintiff was terminated as part of a layoff of the interior department when demand for aircraft interior work dried up. *Id.* at 15:13–14. Brullo and Pichardo were also responsible for authorizing pay raises. D.E. 23–1, at 18:14–18.

Alphatech hires its employees independent of the individual contracts it holds with its air carrier clients. Those employees remain employed by Alphatech even after individual client relationships end.

**2.** AAR is not an air carrier. It serves as an intermediary between the air carriers and Al-

phatech with respect to many of the day-to-day aspects of Alphatech's work.

D.E. 22–1, at 30:18–23. Alphatech's clients do not have a say in how much Alphatech's employees are paid. *Id.* at 33:12–14. Alphatech's clients do, however, check the training file and resume of each Alphatech employee selected by Alphatech to work on a given assignment. *Id.* at 30:12–15. When an air carrier representative is dissatisfied with the work being performed by an Alphatech employee, the representative notifies that employee's Alphatech supervisor. The supervisor then reports the complaint to Pichardo or Brullo. Pichardo and Brullo instruct Alphatech supervisors to discuss any complaints with the air carrier representative in an attempt to "convince him" to allow the employee to stay on the assignment. D.E. 23–1, at 14:1–2.

### *LEGAL STANDARD*

Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. When determining whether the moving party has met this burden, the Court must view the evidence and all factual inferences in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Rojas v. Florida,* 285 F.3d 1339, 1341–42 (11th Cir.2002).

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of proving that no genuine issue of material fact exists, the non-moving party must make a showing sufficient to establish the existence of an essential element of that party's case and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Poole v. Country Club of Columbus, Inc.,* 129 F.3d 551, 553 (11th Cir. 1997); *Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

If the record presents factual issues, the Court must not decide them; it must deny the motion and proceed to trial. *Envntl. Def. Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir.1981).[3] Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co. v. Cont'l Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir.1969). If reasonable minds might differ on the inferences arising from undisputed facts, then the Court should deny summary judgment. *Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc.,* 669 F.2d 1026, 1031 (5th Cir.1982); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[T]he dispute about a material fact is 'genuine,' … if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes,* 398 U.S. at 160, 90 S.Ct. 1598. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or are not otherwise in

---

**3.** Decisions of the United States Court of Appeals for the Fifth Circuit entered before October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981).

dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg,* 370 F.2d 605, 611–12 (5th Cir.1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. 2505.

## DISCUSSION

The question presented by this Motion is, again, whether Plaintiff is an "employee of a carrier by air" for purposes of the FLSA's air carrier exemption. Under the FLSA, employers are required to pay their employees at overtime rates for work in excess of 40 hours per week. *See* 29 U.S.C. § 207. However, certain classes of employees are exempt from this overtime requirement. Thus, the air carrier exemption removes from coverage "any employee of a carrier by air subject to the provisions of Title II of the Railway Labor Act." *Id.* § 213(b)(3). Title II of the Railway Labor Act ("RLA"), in turn, covers "every common carrier by air ..., and every air pilot or other person who performs any work as an employee or subordinate official of such carrier or carriers, subject to its or their continuing authority to supervise and direct the manner of rendition of his service." 45 U.S.C. § 181.

█ The Court will grant summary judgment in Plaintiff's favor on the exemption question because Defendants have failed to produce evidence from which a reasonable factfinder could conclude that the air carriers exercised the requisite control over Alphatech's business. The application of an exemption under the FLSA is an affirmative defense on which the employer has the burden of proof. *Corning Glass Works v. Brennan,* 417 U.S. 188, 196–97, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974). The Eleventh Circuit has found that Title II of the RLA "is certainly unambiguous" in scope, *Valdivieso v. Atlas Air,* 305 F.3d 1283, 1287 (11th Cir.2002). Employers that are not themselves air carriers are nonetheless subject to Title II of the RLA if they satisfy the following two-pronged conjunctive test promulgated by the NMB [4]: (1) the nature of the work performed by its employees is that traditionally performed by employees of air carriers (the "function" prong); and (2) the employer is directly or indirectly owned or controlled by or under common control with an air carrier (the "control" prong). *Verrett v. The SABRE Grp.,* 70 F.Supp.2d 1277, 1281 (N.D.Okla.1999). Both prongs must be satisfied in order for the RLA exemption to apply. Defendants have raised a genuine issue of fact as to the function prong, but not as to the control prong.

### 1. Function

The RLA's definition of a "carrier" sheds additional light on what should be considered work traditionally performed by carrier employees. Under the RLA, the term "carrier" includes actual carriers as well as "any company ... which operates any equipment or facilities or performs any service (other than trucking service) in connection with the transportation, receipt, delivery, elevation, transfer in transit, refrigeration or icing, storage, and handling of property transported." 45 U.S.C. § 151. The focus, then, tends to be

4. The NMB has primary jurisdiction to determine the scope of the RLA. *Thibodeaux v. Exec. Jet Int'l, Inc.,* 328 F.3d 742, 746 n. 6 (5th Cir.2003). While lower courts have adopted the NMB's function-and-control test and treat NMB analyses of the test persuasive in certain instances, courts are not bound by the categorical determinations made by the NMB under this test.

on companies performing the auxiliary functions of loading, unloading, and shipping to and from carriers' depots and terminals for the ultimate transportation of whatever is being carried in interstate commerce.[5]

■ For the purposes of summary judgment, Defendants have presented just enough evidence to put at issue the question of whether Alphatech's work is of the sort traditionally performed by air carriers' employees. In previously denying Defendants' summary judgment motion, the Court found that Defendants had not presented any evidence tending to show that the work performed by Alphatech is *ever* performed by air-carrier employees, let alone that it is "traditionally" performed by those workers. *See* D.E. 41, at 7. When Alphatech works on an aircraft, it does so for an extended period of time, rather than between scheduled flights. In fact, Alphatech's witnesses repeatedly clarified at deposition that the company's work is not at all akin to the rapid cabin cleanup performed by air carrier personnel between flights. Moreover, Pichardo testified that the air carriers hire outside contractors to perform the sort of heavy-duty cleaning work performed by Alphatech. Defendants argue that Pichardo's statement at deposition concerned a *recent trend* in air carrier outsourcing that only reinforces a finding that the outsourced functions are actually "traditionally" performed by air carrier employees. Because Defendants are now the non-moving parties, the Court views this testimony in the light most favorable to them and finds that it arguably raises an issue of fact.

Defendants also point to a series of federal aviation regulations (the "FAR") that it reads as implying that maintenance work is traditionally an air carrier function. Among the most pertinent of these regulations is 14 C.F.R. § 121.363(a), providing that each certified air carrier "is primarily responsible for ... [t]he performance of the maintenance, preventive maintenance, and alteration of its aircraft," and that while the carrier "may make arrangements with another person for the performance of any maintenance," such and arrangement "does not relieve the certificate holder of the responsibility." The Court is reluctant to hold that being "responsible" for a type of work under the FAR necessarily means that the work is performed by the responsible party's employees. As the Fifth Circuit had held, "the applicability of the [air carrier] exemption depends on both the nature of the employee's duties and the nature of the employer's business—not the FAR." *Thibodeaux v. Exec. Jet Int'l, Inc.,* 328 F.3d 742, 754 (5th Cir.2003). Nonetheless, and in an abundance of caution, the Court finds a genuine issue of fact as to the "function" prong of the applicable test.

## 2. Control

■ Defendants argue that Alphatech was controlled by its air carrier clients both in the nature of the work performed and the amount of work performed. Defendants' argument concerning the exacting nature of the work performed by Alphatech for its air-carrier clients describes an independent-contractor relationship, not one of control for the purposes of the RLA exemption. Meticulous work instructions and prior approval of an independent con-

**5.** The Court finds Defendants' reliance on certain NMB decisions unpersuasive. *E.g. In re Evergreen Aviation Ground Logistics Enters.,* 25 NMB 460 (Sept. 22, 1998) (wholly-owned subsidiary of holding company that also owned air carriers); *In re Sky Valet,* 23 NMB 155 (Mar. 20, 1996) (contractor performing janitorial services at terminals and in aircraft between flights).

tractors' employees will not convert those employees into a carrier client's employees for RLA purposes. *See Dobbs Houses, Inc. v. N.L.R.B.,* 443 F.2d 1066, 1070 (6th Cir.1971). In *Dobbs Houses* the court found that while an airline caterer was "engaged in a business which requires it to please some very meticulous and demanding customers, that fact alone does not establish their 'control directly or indirectly' of it or its employees." *Id.* at 1072. In so finding, the Sixth Circuit distinguished the case of a catering company employed by a rail carrier. Control was exercised in that case because: the catering company could not do any work for any other client except by the carrier's explicit permission; the carrier reimbursed the caterer for the total cost of its workers' wages; the carrier had the explicit right to discharge the caterer's employees; and the catering employees were directly subject to the carrier's supervision. *Id.* at 1071. None of those factors were present in the *Dobbs Houses* case, and none are present here.

■ The relationship between Alphatech and its employees both precedes and survives the company's contract with any one air carrier. D.E. 22–1, at 30:18–25. When there came a slowdown in work from Alphatech's air carrier clients across the board, it was Alphatech that decided to terminate a majority of its interior-cleaning department, including Plaintiff. D.E. 22–1, at 16:3–24. If the Court were to equate this dependence on client demand with "control," the RLA exemption to FLSA's overtime requirement would embrace a large and heretofore undefined swath of non-air carriers, despite the Eleventh Circuit's pronouncement that the exemption is "certainly unambiguous in scope," *see Valdivieso,* 305 F.3d at 1287.

■ Nor is Alphatech controlled by its air carrier clients by virtue of its reliance on the amount of work they generate for the company. Carriers control a contractor's employees for purposes of the NMB's exemption test "[w]here the carrier controls the details of the day-to-day process by which the contractor provides services—for example, the number of employees assigned to particular tasks, the employees' attire, the length of their shifts, and the methods they use in their work." *Cunningham v. Elec. Data Sys. Corp.,* No. 06–3530, 15 Wage & Hour Cas.2d (BNA) 1891, 2010 WL 1223084, at *6 (S.D.N.Y. Mar. 31, 2010) (citing *In re Ogden Aviation Serv.,* 23 NBM 98, 104 (Feb. 5, 1996)). Defendants' deposition testimony establishes that the air carriers have absolutely no control over what Alphatech pays its employees, when and how they are promoted or given pay raises, which shifts they work, how many hours they work per shift, or how many employees are scheduled to work on an aircraft at once or on a particular task at once.

Defendants argue that both Plaintiff and her former supervisor testified that the air carriers control how many Alphatech employees will be scheduled on each shift and how many hours those employees will work. The deposition testimony Defendants cite in support of that claim establishes nothing of the sort, but merely describes the unexceptional phenomenon of an independent contractor's workload being determined by the demand for its services. *See* D.E. 24–1, at 18:1–4 ("There was no set schedule. It could be that they called us on a Saturday or Sunday."); D.E. 25–1, at 30:20–23 (explaining that the number of days worked per week "was according to how much work there was to do on the plane"). Alphatech supervisors—in Plaintiff's case, Jorge Valle—were responsible for determining how many employees were needed for a given shift, and which shifts would be assigned. *See* D.E. 22–1, at 17:21; D.E. 23–1, at 10:1–4. The only

contrary statement in the record is from Pichardo's Affidavit, which reads: "The air carriers determine how many Alphatech employees will be scheduled on each shift and the number of hours that each scheduled employee will work." D.E. 8–2 ¶ 10. This contradicts the above-referenced deposition testimony by Valle and Brullo, and by Pichardo himself. This affidavit statement—taken in the context of testimony advanced by Defendants and in the context of Defendants' total showing as to control—is not sufficient to raise a genuine issue of material fact. Accordingly, it is

ORDERED AND ADJUDGED that the Motion, D.E. 38, is GRANTED. Partial summary judgment is entered in Plaintiff's favor on the question of whether 29 U.S.C. § 213(b)(3) applies in the present action. The Court holds that it does not.